B. Lance Entrekin
The Entrekin Law Firm
One E. Camelback Road, Ste. 710
Phoenix, Arizona 85012
Telehone: (602)954-1123

*Attorneys for Plaintiffs Craig Adelman and Jason McGee*
*Additional attorneys listed on signature page*

## UNITED STATES DISTRICT COURT
## DISTRICT FOR ARIZONA

| | |
|---|---|
| CRAIG ADELMAN and JASON McGEE | ) |
| | ) |
| On behalf of themselves and all others similarly situated, | ) |
| | ) |
| Plaintiffs, | ) Case: 2:15-cv-00190-JWS |
| | ) |
| vs. | ) AMENDED COMPLAINT |
| | ) |
| RHEEM MANUFACTURING COMPANY, | ) JURY TRIAL DEMANDED |
| | ) |
| Defendant. | ) |

## AMENDED COMPLAINT

Plaintiffs on behalf of themselves and the proposed Classes defined herein, allege as follows:

## NATURE OF THE ACTION

1.     This is a class action brought by Plaintiffs on behalf of themselves and all persons and/or entities who purchased air conditioners, air handlers and heat pumps ("Rheem Products") manufactured by Defendant Rheem Manufacturing Company ("Rheem"), or who own or have owned a home or other structure in which the Rheem

Products have been installed, and who suffered damages related to their defective Rheem copper evaporator and/or condenser coil products ("coils").

2. Rheem is in the business of engineering, manufacturing, distributing and marketing heating, ventilation and air conditioning ("HVAC") products for residential, manufactured homes and structures, and light commercial use.

3. Rheem designs, manufactures, markets, and distributes HVAC products under the following brand or trade names in the United States: Rheem, Ruud and WeatherKing (collectively "Rheem Brands").

4. The copper evaporator and condenser coils (hereinafter "defective coils") used in the Rheem Products are defective and insufficient for their designed purpose. Specifically, the defective coils are manufactured from material (i.e., bare copper) that, within the HVAC industry, is well known to be prone to formicary corrosion and other defects which lead to holes and cracking in the coils, and premature leakage of refrigerant under normal usage (failures that should not occur during the expected lifespan of the Rheem Products). In addition, the defective coils cannot withstand the higher pressure from environmentally friendly refrigerant that is now legally required to be used, further exacerbating the problem.

5. On information and belief, the refrigerant leakage is due to a defect in the design and manufacturing of the Rheem Products that existed from the date of manufacture. The refrigerant leakage problems with the Rheem Products are prevalent, widespread, and are not unique to the Rheem Products purchased by Plaintiff and members of the proposed Classes. Numerous complaints have been made by aggrieved

consumers regarding refrigerant leakage from the defective coils.

6. Reasonable design and manufacturing alternatives are and have been available to reduce or prevent the problems caused by defective coils such as those used in the Rheem Products. The evaporator and condenser coils can be manufactured from aluminum rather than copper. Aluminum is not susceptible to formicary corrosion. Additionally, copper coils can be coated with polymer sealers or plated with tin to resist corrosion. These types of measures have virtually eliminated the types of problems suffered by purchasers of Rheem Products.

7. Even though Rheem knew about the defective coils in the Rheem Products, their susceptibility to corrosion and the availability of feasible alternative designs or materials, until 2013 Rheem was replacing defective copper coils with equally defective copper coils.

8. Rheem failed to disclose the defect to purchasers like the Plaintiff and the members of the proposed Classes.

9. Additionally, when a refrigerant leak occurs, Rheem fails to compensate consumers for the labor costs to diagnose and repair the Rheem Products, or for the costs of replacing the leaked refrigerant. Plaintiffs' and members of the proposed Classes' damages are a direct, proximate, and foreseeable result of the defects and Rheem's misrepresentations and omissions with respect to the same.

10. Rheem's unfair and unconscionable conduct has caused damages to Plaintiffs and members of the proposed Classes. As a result of Rheem's design and manufacture of defective Rheem Products, Plaintiffs and members of the proposed

Classes are required to pay hundreds or thousands of dollars to diagnose problems, repair and/or replace the defective parts used in the Rheem Products. In some instances it is necessary to replace the entire Rheem Product itself. Likewise, Plaintiffs and members of the proposed Classes incur significant costs to replace refrigerant that has leaked. Finally, Plaintiffs and members of the proposed Classes also incur higher utility bills when their Rheem Products do not operate properly due to the defective coils.

## PARTIES

**Plaintiffs**

11.     Plaintiff Craig Adelman is a resident and citizen of Mesa, Arizona (Maricopa County). On August 25, 2010, he had a new Rheem Split Unit installed in his residence. The condenser unit is Rheem model number RAPM048JEZ and furnace is model number RGPE10NBRMR 2 Stg, which bears serial number: 662021273957. Rheem manufactured, distributed, and sold this HVAC unit under the Rheem brand name. At the same time, an Advanced Distributor Products ("ADP") evaporator coil, model number RE43660D257B2922AP, bearing serial number 7110H12737, was installed. The installer provided Mr. Adelman with a Certificate of Product Ratings that matches his Rheem HVAC unit with the ADP coils (AHRI Certified Reference Number 3895090). See Exhibit A (AHRI Certificate).

12.     The AHRI Certification provided to Mr. Adelman by his installer confirms that his system was installed as a properly matched system and achieved a certified energy efficiency rating with an ARI Reference Number, or a Certificate of ARI Certified

Performance. See Exhibit B.

13. Mr. Adelman purchased the Rheem Product relying upon the warranty that was offered on Rheem HVAC systems, and relying on Rheem's statements about the quality and longevity of its products. He was unaware that his evaporator coil was manufactured by ADP rather than Rheem before this lawsuit was filed on his behalf.

14. The total purchase price for the Rheem Products Mr. Adelman purchased was $6,370.00. In August 2010, Mr. Adelman registered his Rheem Product pursuant to the warranty requirements for ten-year warranty coverage.

15. On April 23, 2012, approximately two years after its purchase, Mr. Adelman notified his original Rheem authorized installer to diagnose problems with the Rheem Product because it was blowing hot air rather than cooling. The installer came out and found a leak in the ADP evaporator coil. At that time, Mr. Adelman spent $132.00 out-of-pocket to replace lost refrigerant while waiting for the replacement coil to arrive. Upon information and belief, pursuant to its warranty, either Rheem or ADP replaced the defective coil, but only replaced it with a similarly defective part. When final work was completed on May 3, 2012, the repair cost Mr. Adelman another $496.34 despite his HVAC system being "under warranty."

16. Only two years later, on June 6, 2014, Mr. Adelman's Rheem HVAC failed again by blowing hot air instead of cooling. He notified the original Rheem installer, requesting that he come out to inspect the unit to see if the latest problem could be identified. The installer noted the unit was "down significantly" on refrigerant, and recommended doing a vacuum check to find the source of the leak. The installer

informed Mr. Adelman that the HVAC air conditioning system would have to be down for at least three days to find the leak. It was not feasible to do testing at that time due to the mid-summer temperatures reaching 110 degrees in Arizona. The installer added additional refrigerant to the Rheem HVAC system at a cost of $353.92, which was paid by Mr. Adelman.

17.    On December 7, 2014, Mr. Adelman was finally able to have the installer come to his residence and perform the vacuum check. The unit was vacuumed out then the installer added nitrogen gas to pressurize the closed system. The cost to Mr. Adelman for the diagnosis and repair was $264.00.

18.    On December 16, 2014, the installer's technician returned to Mr. Adelman's residence to check the Rheem Product's pressure. He found the Rheem condenser coil was completely depressurized, indicating a leak in the system.

19.    Both Mr. Adelman and the installer contacted Rheem. Both were told by Melissa Adamson Rheem's Claims Department Manager that the Company would replace the defective condenser coil but the manufacturer would not provide any special consideration due to the continuing problems with the unit.

20.    Mr. Adelman was forced to replace the defective Rheem condenser coil and had to pay many of the associated costs himself.  The total amount Mr. Adelman spent out-of-pocket for this repair was $641.45.

21.    In the four and one-half years since the installation the defective Rheem Product at Mr. Adelman's residence, he has incurred a total of $1,887.271 for diagnostics, labor, repairs and refrigerant replacement--despite Rheem's ten-year

warranty.

22.     Upon information and belief, Mr. Adelman's ADP evaporator coil is considered a "matched" coil relative to his Rheem Product, although even "non-matching" coils are included in the language of the Rheem Warranty. See Exhibit C.

23.     Mr. Adelman would not have purchased and installed the Rheem Product had he been informed of the existence of Rheem's defective coils and their propensity to prematurely fail, their repeated instances of refrigerant leakage, their general failure to perform as warranted by Rheem, as well as the failure of Rheem's warranty to cover the significant costs of diagnosis, repair, and replacement of refrigerant when Rheem's defective coils fail.

24.     Plaintiff Jason McGee is a resident and citizen of West Palm Beach, Florida (Palm Beach County).  On September 13, 2010, he purchased a new Ruud 2.5 ton 16 SEER 13 EER Split System from Astro Air, Inc. in Boyton Beach, Florida for $4852.00 before a $500.00 rebate. The condensing unit bears model number 14AJM30A01, and serial number N261001723. The air handling unit is model RBHP21J07SH2, serial number 7995w331003604. His system was installed in his residence on November 30, 2010. With his Rheem Product, Mr. McGee received an AHRI Certificate of Product Ratings indicating that the entire system is a Ruud product. See Exhibit D. Rheem manufactured, distributed, and sold this HVAC unit under the Ruud brand name.

25.     Mr. McGee purchased the Rheem Product relying upon Astro Air's recommendations to him and product literature provided to him from Astro Air which was, upon information and belief, written and distributed by Rheem for its Ruud

products. This advertising and information included statements including: "Rely on Ruud," "When you look at the benefits provided, you'll see that you can rely on Ruud Condensing Units to deliver the quality and value you expect," "With this durable construction, you can count on years of ease when you depend on Rheem for your home comfort needs," "Simple, Low Cost System Maintenance . . . keeping service time and expense to an absolute minimum," and "Guaranteed Dependability . . . You can relax and enjoy the peace of mind you deserve with the worry-free operation of our Ruud Condensing Unit."

26.     When he purchased his Ruud system, Mr. McGee relied on both Rheem's and Astro Air's statements about the quality and longevity of the Rheem products. He looked at the features and options as well as the SEER ratings to determine which system he wanted to purchase. His purchase was based upon the representations regarding the reliability and longevity of the Rheem systems. He relied on the representations of the installer that his Rheem Product was covered by Rheem's Warranty. See Exhibit E.

27.     In April 2011, Mr. McGee noticed that his air conditioning system was not cooling sufficiently. At that time, he contacted the installation company who indicated that the unit was not covered by a warranty.  He contacted two other companies and purchased an extended warranty from the third company, Service America.

28.     Service America performed a vacuum check on Mr. McGee's system over a period of several days. They discovered that his evaporator coil was leaking and needed to be replaced.  To repair and replace the coil cost Mr. McGee $369.00 out of pocket.

29.     Mr. McGee would not have purchased and installed the Rheem Product had he been informed of the existence of Rheem's defective coils and their propensity to prematurely fail, their repeated instances of refrigerant leakage, their general failure to perform as warranted by Rheem, as well as the failure of Rheem's warranty to cover the significant costs of diagnosis, repair, and replacement of refrigerant when Rheem's defective coils fail.

**Defendants**

30.     Rheem Manufacturing Company is a manufacturer of heating, ventilation and air conditioning ("HVAC") equipment for residential and light commercial use in North America.

31.     Defendant Rheem Manufacturing Company is a Delaware corporation with its corporate headquarters located at 110 Abernathy Road, N.E., Suite 1400, Atlanta, Georgia.

32.     Rheem Manufacturing Company's business activities include engineering, manufacturing, assembling, marketing and distributing HVAC and related products.  Its products are predominantly marketed under the Rheem, Ruud, and WeatherKing brand names.

33.     At all times relevant to this Complaint, Rheem transacted business within the State by distributing and selling its products to Arizona-based distributors, installer and retailers for sale to Arizona consumers.

## JURISDICTION AND VENUE

34.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2).  The matter in controversy in this class action exceeds $5,000,000.00, exclusive of interest and costs, and Plaintiff and some members of the Class are citizens of states other than the states in which the Defendants are incorporated and are citizens of states other than the states in which the Defendants have their primary place of business.

35.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because: (i) Plaintiff Craig Adelman resides in this district; and (ii) Rheem regularly transacts business in this District and has continuous and systematic contacts with this State through the sale of Rheem Products in Arizona.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring this action on behalf of himself and the following proposed National and State Classes under Rule 23 of the Federal Rules of Civil Procedure:

> The National Class (represented by Plaintiffs Adelman and McGee) consists of:  All persons and/or entities who purchased air conditioners, air handlers and/or heat pumps (collectively, the "Rheem Products") manufactured by Rheem, or who own a home or other structure in which the Rheem Products were installed, and who have been damaged by defective design and/or manufacturing of the Rheem Products.

> The Arizona Class (represented by Plaintiff Craig Adelman) consists of: All persons and/or entities in Arizona who purchased air conditioners, air handlers and/or heat pumps (collectively, the "Rheem Products") manufactured by Rheem, or who own a home or other structure in which the Rheem Products were installed, and who have been damaged by defective design and/or manufacturing of the Rheem Products.

The Florida Class (represented by Plaintiff Jason McGee) consists of: All persons and/or entities in Florida who purchased air conditioners, air handlers and/or heat pumps (collectively, the "Rheem Products") manufactured by Rheem, or who own a home or other structure in which the Rheem Products were installed, and who have been damaged by defective design and/or manufacturing of the Rheem Products.

37. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint. Specifically excluded from each of the proposed Classes are Rheem and its officers, directors, agents, trustees, subsidiaries, trusts, representatives, employees, principals, servants, partners, and joint venturers; entities controlled by Rheem; and Rheem's successors, assigns, or other entities related to or affiliated with Rheem.

38. The members of each Class are so numerous that their individual joinder is impracticable. The precise number of Class members is unknown to the Plaintiffs but is estimated to be in the thousands. The true number of Class members is known by Rheem and/or its distributors. Class members may be notified of the pendency of this action by first class mail, electronic mail and/or by published notice.

39. The Plaintiffs' and the Class members' claims concern common questions of law and fact that are susceptible to common proof leading to common answers. Such common questions of law or fact predominate over any questions affecting only individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

a.    Whether the Rheem Products were defectively designed and/or manufactured;

b.    Whether Rheem knew or reasonably should have known about the defects prior to selling Rheem Products to Plaintiffs and the Classes;

c.    Whether Rheem failed to disclose the design and/or manufacturing defects;

d.    Whether Rheem breached express warranties relating to the Rheem Products to Plaintiffs and the Classes;

e.    Whether Rheem breached implied warranties relating to the Rheem Products to Plaintiffs and the Classes;

f.    Whether Rheem was unjustly enriched;

g.    Whether Rheem breached the consumer protection laws of the States of Arizona and Florida;

h.    Whether Plaintiffs and the Classes are entitled to declaratory relief;

i.    Whether Plaintiffs and the Classes are entitled to injunctive relief to prevent Rheem from continuing its deceptive conduct;

j.    Whether Plaintiffs and the Classes have sustained monetary losses and, if so, the proper measure of those losses; and

k.    Whether Plaintiffs and the Classes are likely to suffer future monetary losses related to these defects, and if so, the proper measure of those losses.

40.    Plaintiffs' claims are typical of the claims of the respective Classes they seek to represent in that Plaintiffs and the Classes purchased defective Rheem Products and/or were owners of homes or structures in which defective Rheem Products were installed. Moreover, Plaintiffs, like the Classes, have been damaged by Rheem's misconduct as described herein.

41.     Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained counsel highly experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.   Plaintiffs have no adverse or antagonistic interests to those of the Classes.

42.     A class action is superior to all available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system with respect to the resolution of the issues set forth in this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court. This action presents no unusual management difficulties.

43.     The claims asserted herein are applicable to Plaintiffs and all consumers, whether individuals or entities, throughout the various States of the Plaintiffs and Class Members who purchased the Rheem Products.

44.     Adequate notice can be given to Class members directly using information maintained in Rheem's records, the records of Rheem's distributors, and/or through notice by publication.

## NATURE OF THE CLAIMS

45.     At all relevant times hereto, Rheem was in the business of designing, manufacturing, supplying, marketing, selling and/or distributing various HVAC products, including air conditioners, air handlers and heat pumps (which can both heat and cool

like an air conditioner) which were installed in the Plaintiffs' and Class Members' residences and other structures. Rheem knew and intended that its Rheem Products would be purchased by persons and/or entities throughout the United States.

46. Rheem describes itself this way on its website:[1]

**A Leading Global Producer of Efficient Heating, Cooling & Water Heating Products**

Respected For Reliability, Rheem is an industry leader for total heating, cooling and water heating solutions. In fact, Rheem is one of the few global brands with product offerings covering residential and commercial heating, cooling, conventional and hybrid storage-style water heaters, tankless water heaters, solar water heating systems, hydronic and geothermal systems, indoor air quality accessories, and replacement parts for all categories – making Rheem a one-stop Air and Water comfort solutions provider.

All Rheem products meet or exceed rigorous industry and regulatory standards for quality, reliability, efficiency, and air & water quality. From design and fabrication to finished product assembly, each phase in the manufacturing process is rigorously monitored and measured to ensure the highest quality, durability and operating excellence. Rheem products are routinely tested and certified by various government and third-party testing labs to ensure quality standards.

\* \* \*

**Well-Known for Quality**

Rheem is the industry leader for total heating, cooling and water heating solutions. In fact, Rheem is one of the few global brands with product offerings covering residential and commercial heating, cooling, conventional storage-style water heaters, tankless water heaters, solar water heating systems, replacement parts and accessories for all categories – making us a one-stop solutions provider.

---

[1] Original text located at: http://www.rheem.com/about/

All Rheem heating, cooling . . . products meet and exceed rigorous industry standards for quality and reliability. . . . Rheem products are frequently tested and certified by various government and third-party testing labs to ensure quality standards.

**Quality Policy**

It is our policy to promote a culture of continual improvement that is committed to exceeding customer expectations and requirements, by providing products and services of excellent quality.

47.     The life expectancy of a central air conditioning unit or heat pump is generally about fifteen years.  When Plaintiffs and the members of the Class purchased their Rheem Products or purchased homes or other structures in which Rheem Products had been previously installed, they reasonably expected the Rheem Products to last at least a decade, if not longer, without requiring major repairs.

48.     HVAC systems like the Rheem Products are composed of three main parts: a compressor (which facilitates heat transfer), a condenser or condensing unit (the condenser coil moves heat to or from the outside air) and an air handler (containing the evaporator coil that moves heat to or from the inside air).  The compressor and condenser are usually located on outside of the structure and the evaporator is located inside the structure.

49.      The evaporator and condenser coils are made up of piping/tubing.  This piping is usually made of metal with fins wrapped around it.  The piping is filled with a

refrigerant, which is involved in heat transfer. The function of the evaporator and condenser coils is to condition the air.

50. The evaporator coil, also called the "indoor coil," is often described as the "cold" coil because it provides cooling by absorbing heat from the indoor air that is blown over the air handler's fan. When hot air flows over the cold, low-pressure evaporator coil, refrigerant inside the evaporator coil absorbs heat from the air and cools it which changes the refrigerant from a liquid to a gaseous state.

51. To keep cooling efficiently, an air conditioner then has to convert the refrigerant gas back to a liquid again. To do that, the compressor puts the gas under high pressure, a process that creates unwanted heat. All the extra heat created by compressing the gas to turn it back into a liquid is then evacuated to the outdoors with the help of a second fan. There, the condenser coil, also called the "outdoor coil," which is often described as the "warm" coil, ejects the heat as a fan blows outside air over its surface.



Figure A: Air-conditioning system

52.     A heat pump is simply an air conditioner that is reversible.  A heat pump has a reversing valve that allows the flow of refrigerant to change direction from "heat" to "cooling," and vice versa.  Refrigerant circulates between the outdoor and indoor sections to either produce heat or to cool air.

53.     An air conditioner or heat pump is a sealed system that should never "use up" or run out of refrigerant, as the refrigerant is simply a medium used to transfer heat from the inside of the building to the outside and is not consumed in the process of cooling.  Thus, the only way refrigerant is lost is through a leak in the system. An air

conditioner or heat pump that is functioning normally should never experience leakage of the refrigerant.

54.     The Rheem Products were materially defective in that their evaporator coils (inside coils) and the condenser/condensing unit coils (outside coils) were defectively designed and/or manufactured to use copper tubing that is susceptible to formicary corrosion and other defects which lead to the formation of holes or cracks in the coil tubing, cause refrigerant to leak from the unit, and cause the Rheem Products to fail long before their expected useful life.



Figure B: Rheem "A" evaporator coils with copper tubing.



Figure C: Rheem "N" evaporator coils with copper tubing.

55.     On information and belief, the copper tubing in the defective coils in Rheem Products was insufficiently designed and/or manufactured and, as a result, the defective coils were prone to premature failure and/or corrosion, including general pitting and formicary corrosion, caused by chemicals in the air (e.g., including but not limited to formaldehyde from cleaning products). Such chemicals can convert into formic acid in the copper tubing, resulting in corrosion and eventual leakage of the refrigerant. In addition, the defective coils, when subjected to vibrations or other expected and ordinary conditions, prematurely fail and leak refrigerant.

56.     The defective coils are subject to and made defective in part by formicary corrosion and/or other latent design defects, which were present at the time of manufacture. Formicary corrosion (sometimes referred to as "ant's nest corrosion") is triggered by the presence of four components: water, oxygen, copper and an organic acid.

The presence of each of these components produces a pattern of microscopic ant-like tunnels visible on the surface of, and compromising the integrity of, the defective coils. This corrosion and/or other latent defects ultimately cause the coils to fail and leak refrigerant from holes or cracks, which prevent the Rheem Products from generating cool air.

57. The Clean Air Act of 1990, 42 U.S.C. § 7671c, mandated a gradual phase out of the use of R-22 refrigerant in air conditioning and heat pump systems. In 2009, the EPA banned the sale or distribution of air conditioner appliances containing or requiring R-22 beginning January 1, 2010. Alternative refrigerants, such as R-410A, which are more environmentally friendly and more energy efficient, are required to be used instead of R-22 in air conditioning units sold in 2010 or after. However, these alternative refrigerants operate at higher pressures than R-22. For example, R-410A operates at up to a 50% higher pressure than R-22.

58. Rheem's defective coils were designed with and manufactured from materials that were not suitable for their intended purpose, as they corroded and/or cracked and/or leaked when either R-22 refrigerant or when the higher pressure R-410A refrigerant was used.

59. Recognizing the problem with formicary corrosion in connection with the use of thin copper tubing, some of Rheem's competitors began producing an all-aluminum air conditioning coil as early as 2005. Nonetheless, despite industry-wide acknowledgement of problems due to formicary corrosion in copper tubing, upon

information and belief, Rheem did not begin using aluminum coils until 2013.[2]  Even

then, the aluminum coils were only incorporated into select air handlers.[3]

60.    As a result of these design and/or manufacturing defects, purchasers of

Rheem Products were forced to pay out-of-pocket expenses to diagnose the problem, to

pay the labor costs to replace and/or repair the defective parts, to replace the entire

Rheem Product in some instances and to replace the lost refrigerant, all of which for

some consumers occurred on multiple occasions.

61.    An additional harm caused when refrigerant leaks from a Rheem Product is

that the evaporator coil can freeze and cause reduced compressor efficiency or even its

complete failure.  This additional consequence of defective coils forces the consumer to

incur additional expense to repair or replace the compressor, and will result in

---

[2] https://www.youtube.com/watch?v=R1vyknfWNLA

[3] Rheem continues to offer products containing copper coils on its website:

http://www.rheem.com/product/cooling-coils-cased-and-uncased-gas-oil-furnace-applications
("Constructed of aluminum fins bonded to internally grooved copper tubing.")

http://www.rheem.com/product/cooling-coils-cased-uncased-n-coil-18-seer-ac-hp-applications
("Constructed of aluminum fins bonded to internally grooved copper tubing.")

http://www.rheem.com/product/cooling-coils-cased-a-coil-16-18-seer-ac-hp-applications
("Constructed of aluminum fins bonded to intergrooved copper tubing.")

http://www.rheem.com/product/cooling-coils-cased-uncased-n-coil-13-16-seer-ac-hp-furnace-applications ("Constructed of aluminum fins bonded to internally grooved copper tubing.")

http://www.rheem.com/product/cooling-coils-cased-horizontal-a-oil-gas-oil-furnace-applications
("Constructed of aluminum fins bonded to internally grooved copper tubing.")

unnecessarily higher utility bills for the consumer. Rheem fails to disclose that loss of refrigerant would cause consumers to experience significantly higher utility bills. For example, a fifteen percent loss of refrigerant may cost the owner of the system ten percent or more in electrical costs, in addition to causing accelerated wear and tear on the Rheem Product.[4]

62. Despite its knowledge of the defects and ongoing problems with the Rheem Products, Rheem failed to disclose that consumers who purchased its defective Products would bear the lion's share of the costs described above.

63. Upon information and belief, at the time that Rheem sold its Rheem Products to the Plaintiffs and putative Class Members, the company knew or should have known that its evaporator and condenser coils were leaking and failing at a very high rate due to defects in materials and/or designs. Upon information and belief, Rheem has discoverable documentation of its defective evaporator and condenser coil failure rates, testing, including but not limited to technical service bulletins which support that Rheem was aware of the defective evaporator and condenser coils prior to the putative class period and prior to the sale of the defective coils to the Plaintiff and putative Class Members.

64. Because Rheem Products were sold without disclosing the defect, the Plaintiffs and the Class Members who purchased Rheem Products, were led to believe

---

[4] http://inspectapedia.com/aircond/Refrigerant_Undercharge.htm; see also Kim, Woohyun and Braun, James E., "Impacts of Refrigerant Charge on Air Conditioner and Heat Pump Performance" (2010). *International Refrigeration and Air Conditioning Conference.* Paper 1122. http://docs.lib.purdue.edu/iracc/1122

Rheem Products are of high quality and to last well over a decade. Instead, they found themselves having to prematurely and repeatedly repair the Rheem Products when they began to prematurely leak refrigerant under normal use.

65.     Upon information and belief, until at least 2013 Rheem was replacing its defective evaporator and condenser coils with equally defective replacement parts, which ultimately puts Plaintiffs and Class Members in a position of having to spend money to replace the defective coils more than once in a matter of a few years.

66.     Despite its knowledge of the defective coils, Rheem misrepresented the quality of the Rheem Products without disclosing the known problems associated with the Rheem Products.   For example, Rheem's website states:

> *Relaxation Starts Here.*
>
> *Chances are, the last thing you think about is your air conditioner. You just expect to be comfortable. That's why Rheem is the best choice you can make. We simply offer the finest air conditioning solutions in the business. Top-quality, innovative products with the latest technology, dependable performance, great warranties and excellent service and support. All of this is why we confidently say, "Relax, It's Rheem."*
>
> http://www.rheem.com/products/heating_and_cooling/air_conditioners/
>
> *Relaxation Starts Here.*
>
> *Chances are, the last thing you think about is your air conditioning or heating system. You just expect to be comfortable. That's why Rheem is the best choice you can make. We simply offer a line of the finest heating and cooling solutions in the business. Top-quality products with the latest technology, dependable performance, great warranties and excellent service and support. All of this is why we confidently say, "Relax, It's Rheem."*

http://www.rheem.com/products/heating_and_cooling/heat_pumps/

*Chances are, the last thing you think about is your air conditioning or heating system. You just expect to be comfortable. That's why Rheem is the best choice you can make. We simply offer a line of the finest heating and cooling solutions in the business. Top-quality products with the latest technology, dependable performance, great warranties and excellent service and support. All of this is why we confidently say, "Relax, It's Rheem."*

http://www.rheem.com/products/heating_and_cooling/package_units/

67.  Rheem's Online Warranty Guide for Heating and Cooling Units states:

*Consumer Rated #1 in AC Reliability*

*Rheem sets the standard in reliability to meet or exceed the high expectations for performance and durability of today's homeowner. The Rheem reputation for durability and reliability is supported by our strong warranties.*

http://globalimageserver.com/FetchDocument.aspx?ID=682d9e43-35ec-48e9-b3f7-1a41d328375d

68.  By failing to disclose that the Rheem Products had inherent defects, Rheem engaged in unconscionable, deceptive and/or unfair business practices, causing damages to Plaintiffs and the Class Members, who reasonably expected that the Rheem Products would not be defective and who otherwise would not have purchased Rheem Products or would have at least paid a lower price for them had they known the truth.

69.  In addition, sales of Rheem Products without disclosing the foregoing material facts constitutes an unconscionable, deceptive and unfair practice because consumers such as Plaintiffs and the Class Members who purchased Rheem Products expected them to be reliable and to last well over a decade. Instead, they discovered that

their Rheem Products failed prematurely due to the defectively designed and manufactured evaporator and condenser coils that leak refrigerant.

70.     Further, Rheem engaged in unconscionable, deceptive and/or unfair practices by failing to notify Plaintiff and the Class Members that repairs were necessary for the Rheem Products they had purchased due to defective coils and by failing to make the necessary repairs.  As a result of Rheem's practices, Plaintiffs and the Class Members had to pay HVAC technicians to diagnose why their units were not working, had to incur costs to replace, repair and/or maintain their units, had to pay to replace the leaked refrigerant, and incurred increased energy costs.

71.     Rheem's Limited Warranty (attached hereto as Exhibits C and E) provides, in relevant part:

## Limited Warranty -- Parts

**SCOPE of WARRANTY and EQUIPMENT COVERED:** The products covered by this Limited Warranty or specified on the reverse side ("Covered Equipment").  RHEEM SALES COMPANY, INC. (Manufacturer of Rheem, Ruud and WeatherKing products) warrants the Covered Equipment to be free from defects in materials and workmanship, and will repair or replace, at its option, ANY PART of Covered Equipment installed in residential* (not commercial) applications which fails in normal use and service within the Applicable Warranty Periods specified on the reverse side in accordance with the terms, including, but not limited to, the specific exclusions set forth below, of the Limited Warranty and subject to the manufacturer's right to inspect and validate the warranty claim as set forth below.  If an exact replacement is not available, an equivalent unit or credit will be provided.  The replacement will be warranted for only the unexpired portion of the original Applicable Warranty Period.  The Manufacturer does not authorize or warranty any online/internet sale of equipment through auction websites or any other method of online sales direct to the consumer.

**EFFECTIVE DATE and APPLICABLE WARRANTY PERIODS:**
The Effective Date of warranty coverage is the date of manufacture plus six (6) months. The Applicable Warranty Periods for the manufacturer's various models and parts are specified on the reverse side.

72.    Rheem's warranty language included in its online warranty guide, as cited above, states: "We are so confident *in our product performance . . ..*" (emphasis added) This language explicitly denotes a performance warranty, which a reasonable consumer would rely upon when purchasing a Rheem Product.

73.    According to its warranty, Rheem's ten year limited warranty "applies to the Manufacturer's single phase heating and cooling models and component parts installed in residential (not commercial) applications, except for certain models, heat exchangers, compressors, installation locations and non-matching coils whose applicable Warranty Periods are listed below."

74.    No definition of "non-matching coils" is included in the warranty or on the Rheem website. The AHRI website states that "[a] qualified contractor will verify the system being installed is properly matched and achieves a certified energy efficiency rating by providing [the consumer] with an ARI Reference Number, or a Certificate of ARI Certified Performance." *See*

(http://www.ahrinet.org/App_Content/ahri/files/Homeowners/perfect%20match.pdf).

75.    If the Rheem Product is installed in a single-family residence, Rheem's Limited Warranty provides for the replacement of defective parts for 5 or 10 years depending on the exact model and whether the consumer registers the Rheem Product.

The Limited Warranty unreasonably disclaims the labor, freight, or other costs associated with repair of Rheem Products, as follows:

> **SHIPPING COSTS:** This Limited Warranty does NOT cover shipping costs. You are responsible for the cost of shipping warranty replacement parts from our factory to the Manufacturer's distributor and from the distributor to the location of your Covered Equipment. You are also responsible for the cost of shipping failed parts to the distributor and for incidental costs incurred locally, including handling charges.

> **LABOR COSTS:** This Limited Warranty does NOT cover any labor costs or expenses for service, NOR for removing or reinstalling parts. You are responsible for all labor costs or expenses unless a labor service agreement exists between you and your service contractor.

76. All provisions of Rheem's warranty are offered without the consumer permitted to bargain as to the terms. The Plaintiffs and Class Members had no meaningful choice for revision of the warranty at the time of their purchase, and upon information and belief, Plaintiffs were not provided with a copy of the warranty until after the purchase of their Rheem Products. The Rheem warranty is offered on a "take it or leave it" basis to the unsuspecting consumers, who did not and could not know of the defective coils at the time of their purchase. In addition, the extremely confusing second page of the Limited Warranty fails to define critical terms like "non-matching coils" and refers to at least 50 different product-specific "exceptions" to the warranty without clear explanations for the consumer.

77. The above limitations on Rheem's warranty are unconscionable. Rheem concealed and failed to disclose to Plaintiffs and the Class members that the Rheem Products were defectively designed and/or manufactured, would fail prematurely, were unsuitable for their intended use, and would begin to require repairs and the replacement

of parts, at times almost immediately after installation. Rheem was obligated to affirmatively disclose these concealed facts because: (a) Rheem knew such facts would be unknown and not easily discovered by consumers and would defeat their ordinary, foreseeable, and reasonable expectations concerning the performance of the Rheem Products; and (b) representations made by Rheem regarding the Rheem Products would be misleading to consumers in the absence of such disclosures.

78. In addition, the Rheem Products were not merchantable at the time they were sold to Plaintiffs and the Class Members, as they did not satisfy a minimum level of quality. Plaintiffs and the Class Members purchased the Rheem Products under the reasonable belief that they would last for well over a decade, requiring no major repairs during that time. However, the design and/or manufacturing defects caused the Rheem Products to fail prematurely. Refrigerant leaks due to the design and/or manufacturing defects sometimes occurs within months of installation and use (as evidenced by Mr. McGee's Rheem Product); other times, these leaks are not discoverable or apparent for a few years (as evidenced by Mr. Adelman's Rheem Product). The defective Rheem Products are unfit for the ordinary purpose for which they are used because the loss of refrigerant reduced or eliminated the Rheem Products' ability to provide supply air at the selected temperature.

79. Plaintiffs and the Class Members are forced to incur significant unanticipated costs to investigate the problem, to replace or repair defective parts, and to replace the refrigerant that leaks from the Rheem Products. In addition, many consumers experience higher utility bills as a result of the Rheem Products' failure to work properly.

Further, Plaintiffs and the Class members experience diminished or total loss of use of the Rheem Products.

80.     Plaintiffs and the Class Members would not have purchased the Rheem Products, or at least would have paid less for them (and they did not receive the benefit of the bargain), had they known of the defects in the Rheem Products.

81.     Plaintiffs and Class Members, as a result of purchasing Rheem Products, own heating and air conditioning systems that have a diminished value as a result of the defective nature of these Products.

82.     As a direct and proximate cause of Rheem's misconduct, Plaintiffs and the Class Members have suffered damages.

### THE LEAKAGE PROBLEM WAS PREVALENT

83.     The leakage problem in Rheem Products was widespread and has resulted in numerous complaints from angry consumers who spent hundreds, or even thousands, of dollars in diagnostic/repair/replacement costs, costs to replace the refrigerant, and high electric costs.

84.     The following are samples of the many complaints posted on websites by frustrated and aggrieved owners of Rheem Products about refrigerant leaks in connection with their Rheem Products:

**FROM:**  http://www.consumeraffairs.com/homeowners/rheem.html

> Lynda of North Little Rock, AR on Nov. 24, 2014
> In October of 2010, we replaced our entire Heating and Air Units to Rheem. In July of 2011, had to call because it was not cooling. The owner of the service company came out and repaired whatever it was. This past summer, unit quit cooling. The owner came out, filled with freon, lasted 24

hours. He and an employee came out and said it came from the factory with a hole in the coil. They again filled with freon and at this time talked as if they had ordered coil but would not be in for awhile. I think they had more important clients so I was on back burner until October. The owner then said he would bill me and at that time I expressed that I was not happy due to the fact that they acknowledged that it came from the factory in that condition, with a hole in the coil. He said it would not be much. Famous last words from him, I have now received a bill for $526.00 for labor. REALLY! If I could rewind, I would not choose Rheem.

Roberta of Mesquite, TX on Nov. 17, 2014
Year 5 and we have had nothing but problems with the unit that was installed Aug 31, 2009. The inside coils had to be replaced after 1year. The Fan Motor control ECM had to be replaced in 2013 - out labor cost of $200. The compressor fan motor had to replaced in Nov 2014 - out Labor cost of $250. They replaced it and 10 minutes later the unit shut down again. Now they are saying that the TXV on the heat pump is causing to short cycle on heat - will again be out Labor of $625. This is a nightmare and all the RHEEM service center says is they are not responsible for labor. WHAT ABOUT putting POOR QUALITY PRODUCT in consumer homes. WARNING to others - RHEEM does not take accountability for bad products.

Tony of Miami, FL on May 28, 2014
I have a high efficiency Rheem AC Prestige unit which is roughly 4 years old. I have had to fill the freon three times already at a cost of 300 per occurrence. Also, in February 2014, I went ahead and replaced the coil with a brand new Rheem coil, paid 450.00 for labor/installation and guess what, it is currently leaking out again. It appears that this seems to be a recurring issue with Rheem units. I wish I would have known prior to purchasing the unit. They aren't cheap either! I believe that there are enough people with the same issue that a class action lawsuit might be in order!

Ann of Palm Beach Gardens, FL on Nov. 21, 2013
Purchased a $5500 system in early 2011. In early 2013 the first control board in the 18-seer dual condenser failed - labor cost $230. A few months later the other control board failed - labor cost $230. Then a month later the coils in the handler started leaking Freon - labor cost $900+ and then in October one of the compressor failed and had to be replaced - labor cost $700+. Very poor product quality value and we are led into a false sense of security with this 10-year warranty that we get, but that is only for parts. A $5500 system fails in 2 years! I asked Rheem for help and they said "no".

Cindy of Madison, TN on Feb. 23, 2010

My parents had a Rheem 3Ton 10 Seer Pkg. H.P., MN RQKA-A036JK015-541, installed by Kimbro which is now Interstate AC on 12-30-03. This unit is 7 yrs old and we were told it needs to be replaced. They paid $4,397.00. My father has passed away in November 2009. My Mom and myself are very unhappy with this product. People should get more than 7 years out of a new unit. My Mom noticed it was cold in the house and then she noticed it was running all the time. Interstate told us the compressor had leaked out all the freon, he supposedly patched it and filled it with freon and charged $275.00 on February 5, 2009. A week later my Mom noticed it was not shutting off again and cold. Interstate said she needed a new unit. We got a second opinion from another company they agreed it has to be replaced. For two months her light bill was three times what it normally is. Which is great since she doesn't have any income coming in yet due to my father's death. She will have to buy new unit out of her savings which is what she is currently living off of.

Don of Oakland, TN on June 17, 2010

New home (3yo) came with 4 ton Rheem central air. It started blowing hot air the week before Memorial Day. Tech was here fast and found a coil leak and bad valve. Unit has 10 year warranty. Cordova HVAC checked and no coils are available anywhere. Rheem says it has to manufacture one and it'll be on the 11th (3 weeks). Nope. Now it's the 28th (5 weeks). No labor is included so my warranted unit will cost over $600 to repair, if they can find a coil. Memphis has been regularly running 100-110 heat indexes with no relief in sight. As I work out of my house, it is not a pleasant place to be.

Anthony of Carriere, MS on June 29, 2010

I had a new Rheem 4 ton heat pump installed at my personal residence in April 2010. Less than two months later, the unit fractured the bleed line from the condenser orifice. I had it repaired costing 481 dollars. No parts were changed, just the line repaired and 15 lbs of freon. This line vibrates badly when the compressor starts and will probably break again if something is not done. I talked to Rheem and they had nothing to say about. I have heard of many other units with the same problem.

**FROM:** https://www.furnacecompare.com/heat-pumps/rheem/reviews/

Waldo Bernal of Gulfport, MS on Sept. 6, 2014

The unit was installed by Climate Control, Inc. of Gulfport, Mississippi, on 5/1/12 for $5,500. Failed on 7/12/14. Replaced coil, $1,100. Very unsatisfied with local agent (Climate Control, Inc). Seems factory should have the performance under warranty. The local vendor was unresponsive

to the warranty complaint. Owned previous Rheem unit that worked well (post-Hurricane Katrina 2005), by different vendor.

M.Weinrich of Palm Coast, Florida on Nov. 15, 2008
Rheem is an appropriate name for a company that treats its customers so poorly. My 5 year Rheem unit developed leaks in all the coils, replacement cost approx$500. My warranty expired 11/04, my problems occurred on 11/06, 11/10..Rheem would not honor my warranty at all. I had to replace entire system.

"Very upset customer" on March 6, 2007
If you want to save yourself alot of service calls and wasted money, buy something else. Rheem is difficult to deal with and does not stand behind their product or their product warranties. At three almost four years the coil had to be replaced, freon added twice and other difficulties. Now not six months later the guage for freon is messed up and the compressor is shot. The repair man just left today and I can not remember all the things he told me are new things wrong.

Gary Ross of Popka, FL on Feb. 15, 2007
Every major compent has been changed out and now the evaportor coil is leaking again for the 3rd time. This central AC/heatpump unit I purchased from RHEEM is definately a lemon!!

85.    Additionally, Rheem contractors and installers have confirmed the prevalence of the refrigerant leakage problem with the Rheem Products, with one installer posting a video from Rheem touting the advantages of its all-aluminum coils.[5]

09-27-2013, 03:12 PM #1

**bb**

○ Professional Member

**Too Little Too Late. Rheem Coils**

That Title should be "Too Little Too Late?

---

[5] Original posts located at:  http://hvac-talk.com/vbb/showthread.php?1407151-Too-Little-Too-Late-Rheem-Coils&highlight=Rheem+leaks

So apparently Rheem is trying to resolve their coil problems. How long will it take for these to hit the distributors shelves?

Our supplier tried to pawn an un-tinned "CU" coil for an air handler on us the other day while they had pallets full of tinned "TU" coils.

Removed a 2013 N-coil the other day and the 60% of the return bends on the back of it were black with corrosion. The other 40% along the top (if it were in upright position) were shiny copper. It was my understanding that Rheem supposedly fixed the problem of bad manufacturing oils trapped under the fins 2 years ago. Was that a lie?

How many of you have given up on Rheem?
http://www.youtube.com/watch?v=R1vyknfWNLA

09-29-2013, 07:55 PM #7

**mason**

Professional Member

Location

Western, KY

**Too Little Too Late. Rheem Coils**

. . . As far as leaks that's been industry wide, carrier had a ridiculous run, I've noticed the replacement coils for them are all aluminum now. Rheem had a really bad run... Seems everybody had a bad run sometime between 2007-2010. It happened to coincide with the 410-A switch but I speculate it was thinner copper coupled with poor construction, materials and quality control, JMO. . . .

09-29-2013, 08:37 PM #8

**ga-hvac-tech**

Professional Member*

Atlanta GA area

. . . I had some issues with the coils... mostly from coils mounted in 2010 during the 16 SEER tax credit time... We got some from the dist that were marked 'tested, no N2 pressure'. My gut said they would be an issue... and

yes, literally every one that came from a box saying 'tested...' failed within 2 years. They are all changed now.

MeThinks the industry was trying to be 'cheap' and went too thin with the CO tubes back in the R-22 days. Somehow, the bean counters did not (or would not) accept that we needed thicker wall tubing for higher 410 pressures. . ..

Quality work at a fair price with excellent customer service!

09-30-2013, 11:31 AM #9

**lkapigian**

○ Professional Member*

Location

Visalia California 93291

Formicary Corrosion- We have replaced dozens of them, We only use tin plated or aluminum coils now, not sure why they dont coat the return bends other than they are not in the air stream- have not seen a problem. I will add that the the systems installed that have had 350-450 cfm per ton air flow the failure rate is a fraction of what the low air flow systems are that are doing excessive latent- more water on the coil more corrosive I assume but it is significanly lower in our area if you are doing airflow verification on the systems you install or coils you replace

09-30-2013, 02:36 PM #10

**ksefan**

○ Professional Member*

Location

Arrowhead Stadium

We stopped dealing RUUD in 2006 when they couldn't get us 13 seer in time. I've replaced many coils and now our local distributor stopped dealing rheem and RUUD altogether. Poor quality,design,and lack of efficiency. Only hacks install these brands in our area and that has a lot to due with my perception of their brand quality.

86.     Rheem was or should have been fully aware of the defective condition of the Rheem Products. The defective condition of the Rheem Products were not discoverable upon reasonable inspection by Plaintiffs and the Class Members who were not trained technicians, and it took months or years to fully manifest although it existed at the time of sale to the Plaintiffs and putative Class members.

87.     Rheem's refusal to pay for diagnostic, labor and refrigerant replacement costs in order to provide a complete remedy for the problems caused by the defective Rheem Products is unconscionable because it knew of the defect at the time they were sold.

88.     Rheem knew or should have known that its coils were defective but nonetheless failed to disclose the defects to Plaintiffs or to the public, warranted that the products were free from defects, and specifically limited the Plaintiffs' and Class Members' ability to seek relief under the warranty.  These acts were misleading and deceptive to the Plaintiffs and Class Members since the defects were not readily evident or visible at the time of purchase.

89.     Plaintiffs and the Class Members suffered damages in that they incurred costs to diagnose the problem, labor costs to repair or replace the defective Rheem Products, costs to replace the refrigerant, and increased energy costs, and often experienced these failures more than one time.  These costs were unreasonable and unconscionable for Plaintiffs and the Class Members to bear because Rheem was aware that the Rheem Products were defective and were prone to prematurely fail, yet the company failed to disclose these defects.  In addition, Plaintiffs and the Class Members

have conferred a benefit on Rheem by overpaying for their defective Rheem Products. As a result of Rheem's misconduct and omissions, Plaintiffs and the Class Members failed to receive their benefit they bargain for and suffered losses as a result.

**FIRST CAUSE OF ACTION**
**Declaratory Relief**
**(Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.)**
(On behalf of all Plaintiffs and members of the Classes)

90.     Plaintiffs and the Class Members incorporate by reference and re-allege all paragraphs previously alleged herein.

91.     Rheem designed, manufactured, produced, tested, inspected, marketed, distributed, and sold Rheem Products that contain a material design defect as described above.

92.     In the event the fact finder determines that monetary relief is an insufficient remedy for the conduct described above, the Plaintiffs and the Class Members further allege as follows: an actual controversy, over which this Court has jurisdiction, now exists between Plaintiffs and Rheem concerning their respective rights, duties and obligations for which Plaintiffs desire a declaration of rights under the Express Warranties. Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

93.     Rheem advertises and warrants its Products' reliability, dependability, and "years of worry-free performance," in addition to the promises the company has made in its Express Warranties. Plaintiffs further contend that Rheem breached its warranties to

Plaintiffs and the Class Members when they received Rheem Products at the time of the purchase that were worth less than what was promised by Rheem's advertising and Express Warranties.

94.     Plaintiffs seek a declaration of the parties' respective rights, duties and obligations under the Express Warranties and other promises made by Rheem related to the quality and reliability of the Rheem Products, and specifically that Plaintiffs and the Class Members are entitled to recover their out-of-pocket expenses related to repair and/or replacement of their defective Rheem Products, or any of their component parts under the Express Warranties.

95.     Plaintiffs further assert that due to Rheem's replacement of defective evaporator and condenser coils with equally defective replacement coils, there is a substantial likelihood that the Plaintiffs and Class Members will suffer additional injuries in the future when the replacement coils prematurely fail.

96.     Absent relief from the Court, the Plaintiffs' and Class Members' Rheem Products will cease functioning due to their defective coils after the expiration of any applicable warranties, leaving the Plaintiffs and Class with no recourse whatsoever.

97.     A judicial declaration is necessary in order that Plaintiffs and the Class Members may ascertain their rights and duties under the Express Warranties.  At this time, Plaintiffs and the Class Members have Rheem Products that were or continue to remain defective in design, materials and/or workmanship. Plaintiffs and the Class

Members suffered damages at the time of their purchases and have paid or will have to pay future repair and/or replacement costs as a direct result of the defective Rheem Products.

## SECOND CAUSE OF ACTION
**Injunctive Relief**
(On behalf of all Plaintiffs and members of the Classes)

98.     Plaintiffs and the Class Members incorporate by reference and re-allege all paragraphs previously alleged herein.

99.     Rheem designed, manufactured, produced, tested, inspected, marketed, distributed, and sold Rheem Products that contain a material design defect as described above.

100.    Rheem continues to market, distribute, and sell Rheem Products that contain the defective coils and has done nothing to retrofit or repair Rheem Products containing the defective coils described herein or remove them from the market and from the possession of consumers. The defective coils constitute a continuing source of harm and damages to the Plaintiffs and Class Members.

101.    The defective Rheem Products described herein poses an imminent risk of failure to the Plaintiffs, the Class Members and the public.

102.    Rheem has never admitted the existence of the defect in the Rheem Products, issued any warnings or notices concerning the defect, offered to fully compensate purchasers who have incurred expenses as a result of failures of their Rheem products, or implemented a recall of the defective Rheem Products.

103.    Plaintiffs and the Class Members have suffered actual damage or are in immediate risk of suffering damages due to the defectively designed Rheem Products.

104.    In the event the fact finder determines that monetary relief is an insufficient remedy for the conduct described above, Plaintiffs and the Class Members request additional or alternate relief in the form of an injunction prohibiting Rheem from refusing to take appropriate corrective action including but not limited to: issuing a nationwide recall to replace and/or retrofit the defectively designed Rheem Products; issuing warnings and/or notices to consumers concerning the design defects and the risks they pose to the operation of the Rheem Products; and, if Rheem has not already done so, prohibiting the continuing manufacture, production, marketing, distribution, and sale of the defective Rheem Products.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty**
(On behalf of Plaintiffs and members of the Classes)

105.    Plaintiffs and the Class Members incorporate by reference and re-allege all paragraphs previously alleged herein.

106.    Plaintiffs and the Class Members purchased or were required to repair and/or replace one or more Rheem Products.

107.    Rheem expressly warranted to Plaintiffs and the Class Members that the Rheem Products: (a) came with a ten year warranty under certain circumstances or at least a five year warranty;  (b) were "the most reliable heating and cooling equipment"; and (c) would be free from defects in materials and workmanship that affect performance under normal use and maintenance. Rheem's Limited Warranty provides, in relevant part:

**Limited Warranty – Parts**

**SCOPE of WARRANTY and EQUIPMENT COVERED:** The products covered by this Limited Warranty or specified on the reverse side ("Covered Equipment"). RHEEM SALES COMPANY, INC. (Manufacturer of Rheem, Ruud and WeatherKing products) warrants the Covered Equipment to be free from defects in materials and workmanship, and will repair or replace, at its option, ANY PART of Covered Equipment installed in residential (not commercial) applications which fails in normal use and service within the Applicable Warranty Periods specified on the reverse side in accordance with the terms, including, but not limited to, the specific exclusions set forth below, of the Limited Warranty and subject to the manufacturer's right to inspect and validate the warranty claim as set forth below. If an exact replacement is not available, an equivalent unit or credit will be provided. The replacement will be warranted for only the unexpired portion of the original Applicable Warranty Period. The Manufacturer does not authorize or warranty any online/internet sale of equipment through auction websites or any other method of online sales direct to the consumer.

**EFFECTIVE DATE and APPLICABLE WARRANTY PERIODS:** The Effective Date of warranty coverage is the date of manufacture plus six (6) months. The Applicable Warranty Periods for the manufacturer's various models and parts are specified on the reverse side.

108. Rheem made the previously described express affirmations, statements, assertions, and representations concerning the Rheem Products' quality and durability in their marketing and advertising materials. Such affirmations constitute express warranties.

109. Plaintiffs and the Class Members did not have any meaningful choice as to whether to accept Rheem's warranty limitations at the time they purchased/installed their Rheem products. Plaintiffs and the Class Members had no ability to negotiate around or waive the provisions of any warranty limitations. The warranty terms were presented on a "take-it-or-leave-it" basis.

110.   Rheem breached its warranty because Plaintiffs and the Class Members did not receive a Rheem Product that was free of defects.  Specifically, the Rheem Products were defective, suffering premature coil corrosion that resulted in refrigerant leaks.

111.   The defects in the Rheem Products are latent and not discoverable on reasonable inspection.   In addition, replacement of the defective coils with equally defective coils subjects the Plaintiffs and Class Members to future failures, repairs and replacements of the same parts. As such, Rheem's express warranty fails in its essential purpose.

112.   By notifying their Rheem authorized installers of the failure of their defective HVAC systems, Plaintiffs and Class Members have provided Rheem with notice of the defect.

113.   Further, both Plaintiff Adelman and his installer notified Rheem of the failure of his defective evaporator and condenser coils, and the repeated problems which he was experiencing with his Rheem Product, but the manufacturer failed to offer relief or a non-defective replacement part to Plaintiff.

114.   In addition, because the Rheem Products contain a latent defect, any warranty limits are unconscionable.

### FOURTH CAUSE OF ACTION
**Breach of Written Warranty**
**(Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*)**
(On behalf of Plaintiffs and members of the Classes)

115.   Plaintiffs and the Class Members incorporate by reference and re-allege all paragraphs previously alleged herein.

116.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

117.    Plaintiffs and the Class Members are "consumers" within the meaning of Magnuson-Moss Act, 15 U.S.C. § 2301(3).

118.    Rheem is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §§ 2301(4)-(5).

119.    The defective Rheem Products at issue in this lawsuit are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(1).

120.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

121.    Rheem's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The defective Rheem Products' implied warranties are covered under 15 U.S.C. § 2301(7).

122.    Rheem breached these specific warranties as described in more detail above, and also breached them generally: by manufacturing Rheem Products that are defective in design, materials and workmanship and are likely to fail prematurely; by selling defective Rheem Products not in merchantable condition, which present an unreasonable risk of failure and are unfit for the ordinary purpose for which HVAC units are used; by providing Rheem Products that were defective at the time they were purchased; by refusing to repair or replace free of charge, the defective Rheem Products or any of their component parts; by forcing consumers to pay for out-of-pocket costs for

diagnostics, labor, repair and replacement parts; and not curing defect once it was known and identified.

123.    Where necessary, Plaintiffs and the Class Members have had sufficient dealings with Rheem through its written warranties to establish privity of contract between Rheem, Plaintiffs, and the Class Members.

124.    In addition, privity is not required in this case because Plaintiffs and the Class Members are intended third-party beneficiaries of Rheem's implied warranties. Installers of Rheem Products were not intended to be their ultimate consumers and have no rights under the warranty agreements provided with the Rheem Products; rather, the warranty agreements were designed for an intended to benefit only ultimate consumers such as the Plaintiff and Class members.

125.    The amount in controversy of each Plaintiff's individual claim meets or exceeds the sum or value of $25.00.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

126.    As a direct and proximate result of Rheem's breach of express warranties, Plaintiffs and the Class Members sustained damages and other losses in an amount to be determined at trial.  Rheem's conduct caused Plaintiff's and the Class Members' damages and accordingly they are entitled to damages, diminution in value, costs, attorney fees, rescission, specific performance, and/or other relief as appropriate.

127.    Rheem is liable to Plaintiffs and the Class Members pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability.  Specifically,

the Rheem Products have defective coils that render the Rheem Products incapable of performing their intended function for the expected life of the product.

128.    Rheem also is liable to Plaintiffs and the Class Members pursuant to 15 U.S.C. § 2310(d)(1), because it breached its express warranties to Plaintiff and the Class Members.    Specifically, Rheem breached its express warranties to Plaintiffs and the Class Members by failing to provide non-defective Rheem Products, and/or perform repairs/retrofits sufficient to render the Rheem Products non-defective during the warranty period despite knowledge of the defective coils and the risks of failure they posed to Plaintiffs and the Class Members.

129.    Plaintiff Adelman and the Class Members gave Rheem an opportunity to cure pursuant to 15 U.S.C. § 2310(e) by *inter alia*, their repeated contacts with Rheem about the defect as described herein which notified the Company of the defect present in the Rheem Products purchased by Plaintiff and the Class Members, yet Rheem failed to provide Plaintiff and the Class Members with non-defective Rheem Products.

130.    Further, when notified of a defective Rheem Product, it is Rheem's practice to routinely deny liability for costs of shipping, labor for diagnosing the problem, repair costs, replacement of the leaked refrigerant, and/or higher utility bills caused by the defect.

131.    Even if this were not the case, requiring an informal dispute settlement procedure and/or to afford Rheem a reasonable opportunity to cure its breach of written warranties to Plaintiffs would be unnecessary and futile. At the time of sale, Rheem knew, should have known, or was reckless in not knowing of the defect, but nevertheless

failed to rectify the situation and/or disclose it to Plaintiffs and the Class Members. Moreover, the remedies available through any informal dispute settlement procedure would be wholly inadequate under the circumstances. Accordingly, any requirement under the Magnuson-Moss Act or otherwise that Plaintiffs and the Class Members resort to any informal dispute settlement procedure and/or to afford Rheem a reasonable opportunity to cure its breach of written warranties to Plaintiffs and the Class Members is excused and, thereby, deemed satisfied.

132. Plaintiffs and the Class Members would suffer economic hardship if they returned their defective Rheem Products but did not receive a refund of all payments made by them. Because Rheem is refusing to acknowledge any revocation of acceptance and return any payments made, Plaintiffs and the Class Members have not re-accepted their defective Rheem Products by retaining them.

133. Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and the Class Members seek to revoke their acceptance of the defective Rheem Products, or, in the alternative seek all damages caused to them by Rheem's breaches of implied and express warranties, which damages constitute the cost of replacing the Rheem Products with non-defective Rheem Products, retrofit of the defective Rheem Products, diminution in value of their Rheem Products plus all costs Plaintiffs and the Class Members reasonably incurred or will incur in removing, re-installing, replacing or retrofitting the Rheem Products, the refrigerant lost due to the leaking coils or the labor and other costs associated with these repairs.

134. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the Class Members are entitled to recover a sum equal to the aggregate amount of all costs and

expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiffs and the Class Members in connection with the commencement and prosecution of this action.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
(On behalf of all Plaintiffs and members of the Classes)

135.    Plaintiffs and the Class Members incorporate by reference and re-allege all paragraphs previously alleged herein.

136.    Substantial benefits have been conferred on Rheem by Plaintiffs and the Class Members by purchasing Rheem Products, and Rheem knowingly and willingly accepted and enjoyed those benefits.

137.    Rheem knew or should have known that payments received from Plaintiffs and the Class Members for Rheem Products were paid with the expectation that the Rheem Products would perform as represented.

138.    Rheem's retention of these benefits is inequitable.

139.    Plaintiffs and the Class Members are entitled to recover from Rheem all amounts wrongfully collected and improperly retained by Rheem, plus interest.

140.    As a direct and proximate cause of Rheem's wrongful conduct and unjust enrichment, Plaintiffs and the Class Members are entitled to an accounting, restitution, attorneys' fees, costs and interest.

## SIXTH CAUSE OF ACTION
### Arizona Breach of Express Warranty
### (Plaintiff Adelman and the Arizona Class)

141. Plaintiff realleges and incorporates the preceding paragraphs as if fully set forth herein.

142. Rheem had knowledge of the defects in the Rheem Products and that these defects posed unreasonable risks of failure consumers like Plaintiff Adelman and the Arizona Class Members.

143. Rheem expressly represented and warranted to Plaintiff and the Class Members through oral and written statements, descriptions, and affirmations of fact through its website, print advertising, marketing materials, and its written warranties that the Rheem Products were fit for their intended purposes.

144. Rheem expressly represented and warranted the Rheem Products against defects in materials and workmanship for a period of either ten or five years, depending on the exact model purchased and/or installed.

145. Rheem publicized these statements to consumers and was aware that consumers would reasonably rely on statements and warranties related to the quality and workmanship of the Rheem Products.

146. These express warranties were unavoidably material to the Plaintiff and Class Members who would have chosen to purchase a different product if they had prior knowledge that Rheem Products were susceptible to premature failure as a result of the defect in their design and/or manufacture.

147. Plaintiff and the Class Members reasonably relied on these express warranties when they chose to purchase their Rheem Products or property containing previously installed Rheem Products.

148. At the time that it made these express warranties, Rheem knew the use for which the Rheem Products were intended and it expressly warranted that the Rheem Products were fit and safe for their intended purpose.

149. At the time that they made these express warranties, Rheem knew of the latent defects in the Rheem Products, but continued to market them by means of false and misleading information, including that the Rheem Products would last ten years (or alternately five years) without acknowledging or warning consumers of their actual shortened lifespan.

150. Plaintiff Adelman and his installer each notified Rheem about the failure of its Product, giving the manufacturer opportunity to cure the defect and damages, yet Rheem failed to do so.

151. Plaintiff and the Class Members have incurred damages including, but not limited to, costs to diagnose the problem, costs to repair or replace the defective Rheem Products, costs to replace refrigerant, and increased energy costs as described herein as a direct and proximate result of Rheem's misrepresentations in its express warranty.

**SEVENTH CAUSE OF ACTION**
**Violation of Arizona Consumer Fraud Act,**
**Ariz. Rev. Stat. § 44-1521, *et seq.***
**(Plaintiff Adelman and the Arizona Class)**

152.    Plaintiff Adelman incorporates by reference each of the foregoing allegations.

153.    The Arizona Consumer Fraud Act ("ACFA"), Ariz. Rev. Stat. § 44-1521, *et seq.* was in full force and effect during the relevant time period applicable to this Complaint.

154.    Plaintiff and the Arizona Class are consumers within the meaning of the ACFA given that Rheem's business activities involve trade or commerce, are addressed to the market generally, and otherwise implicate consumer protection concerns.

155.    Rheem Products are merchandise within the meaning of the Act, and Rheem is engaged in trade or commerce within the meaning of the ACFA.

156.    The ACFA states, in relevant part, as follows:

> The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

157.    When Rheem designed, developed, manufactured, marketed, and sold defective Rheem Products, it was involved in the conduct of trade and commerce under the ACFA.

158.    At the time Rheem developed, manufactured, marketed, and sold the defective Rheem Products, it knew that they contained defects that pose serious unreasonable risks of failure to consumers like Plaintiff and the Arizona Class Members.

159.    Rheem concealed its knowledge of the defect from consumers like Plaintiff and the Class Members and instead sold the defective Rheem Products as reliable for normal use.

160.    The defects pose unreasonable risks of failure to consumers, which were hidden from the consumers.

161.    Rheem intentionally concealed the risks associated with the defective Rheem Products, which were material facts to consumers like Plaintiff and the Class Members. No reasonable consumer would have knowingly bought a defective Rheem Product for use if that consumer had known that the product was designed and/or manufactured with the defects.

162.    In or around 2013 when Rheem changed the design of the Rheem products discontinuing the use of copper coils in some instances, it concealed this defect of the earlier design from consumers including Plaintiff and the Class Members, and failed to remove the defective Rheem Products from the stream of commerce or to warn consumers of the defect.

163.    Rheem did not recall the defective Rheem Products, nor did it notify property owners that the defective Rheem Products would prematurely fail.

164.    Rheem's intentional misrepresentations, omissions and concealments of material fact constitute unfair and/or deceptive practices in violation of the ACFA.

Specifically, Rheem violated the ACFA when it sold the defective Rheem Products representing them to be reliable, free from defects and fit for their intended purpose, and when Rheem failed to disclose to Plaintiff and the Class Members that the Rheem Products suffered from a defect which would result in premature failure and refrigerant leakage. Rheem's misrepresentations posed unreasonable risks of failure to consumers and the public.

165. Rheem's deceptive practices including, but not limited to, the marketing of the defective Rheem Products, were designed to induce Plaintiff and the Class members to purchase Rheem Products containing the defect and to avoid the cost of replacing, repairing or retrofitting the defective Rheem Products sold to and already in use by thousands of consumers throughout Arizona.

166. Plaintiff and the Arizona Class Members suffered injury in-fact as a direct result of Rheem's violations of the ACFA in that they have purchased defective Rheem Products that pose an unreasonable risk of premature failure and will have to be repaired and/or replaced long before the end of their expected useful lives.

167. Had Rheem disclosed the true quality, and defective nature of the Rheem Products, Plaintiff and the Class Members would not have purchased the defective Rheem Products.

168. Plaintiff and the Class Members have also expended money for diagnosis, repairs, replacement of refrigerant and for increased utility costs as a result of Rheem's conduct.

169. Rheem continues to violate the ACFA by concealing the defective nature of the Rheem Products by failing to issue a, by failing to notify customers of the risk of failure associated with the defective Rheem Products, and by failing to offer cost-free repair or replacement of the defective Rheem Products.

170. As a direct and proximate result of Rheems unfair acts or practices alleged herein, Plaintiff and Arizona class members were damaged in that they suffered unnecessary out-of-pocket costs to have the problems caused by the defective Rheem Products diagnosed, to have them repaired and/or replaced, to replace leaked refrigerant, to have to pay increased utility bills.

### EIGHTH CAUSE OF ACTION
**Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201-501.23**
**(On behalf of Plaintiff McGee and the Florida Class)**

171. Plaintiff adopts and incorporates herein the allegations set forth in the paragraphs above.

172. Plaintiff McGee asserts this claim individually and on behalf of the Florida Classes.

173. The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.23 *et seq.*, ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Fla. Stat. § 501.204(1) (2001).

174. Defendant's acts and practices, alleged herein, constitute unfair, deceptive, and/or fraudulent business practices in violation of the FDUTPA, including but not

limited to, Defendant's misrepresentations and omissions in the sale of defective Ruud and Rheem Products.

175. Defendant intended for Plaintiff and members of the Subclasses to rely on its deceptive acts and practices, and such deceptive acts and practices occurred in the course of conduct involving trade or commerce.

176. Plaintiff McGee and members of the Florida Class were exposed to such omissions and misrepresentations and were deceived.

177. Defendant's violation of the FDUTPA caused Plaintiff McGee and members of the Florida Class to sustain substantial and ascertainable losses of money and/or property and other damages because they were induced to purchase or paid a price premium due to the false and misleading advertising and marketing of Rheem Products and/or Defendant's failure to disclose the defects of said products, and/or paid to replace defective Coils.

178. Plaintiff McGee's and the Florida Classes' Rheem Products are of significantly diminished value because the Rheem Products do not perform their sole function without the need for costly repairs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Members of the respective Classes, pray for judgment against all Defendants as follows:

A. An Order certifying the proposed Classes and appointing Plaintiffs and his counsel to represent the respective Classes;

B. An Order declaring the Rheem Products to be defective;

C.     An Order declaring that the Rheem Products pose a risk of failure to consumers and the public;

D.     An Order awarding injunctive relief by requiring Rheem to take corrective actions including notification, recall, repair, retrofitting, or to establish a fund in order to make necessary repairs to correct the defects found in the Rheem Products as alleged herein; and/or replacement of the defectively designed Rheem Products;

E.     Payment to Plaintiffs and the Members of the Classes of all damages associated with the repair, retrofitting and/or replacement of the defective products and parts, in an amount to be proven at trial;

F.     Payment to Plaintiffs and the Members of the Classes of all damages associated with property damage as a result of the defective products, in an amount to be proven at trial;

G.     Payment to Plaintiffs and the Members of the Classes of all damages associated with loss of value and/or reduced value of the Rheem Products and less of the benefit of the bargain as a result of the design defect, in an amount to be proven at trial;

H.     Restitution as authorized by law;

I.     Punitive damages as authorized by law;

J.     Specific performance under Rheem's Express Warranties;

K.     An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the class;

L.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

M.      Such other and further relief as this Court may deem just, equitable, or proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: March 24, 2015.                    RESPECTFULLY SUBMITTED,


                    */s Gregory F. Coleman*
                    Gregory F. Coleman
                    Lisa A. White
                    GREG COLEMAN LAW PC
                    550 Main Avenue, Suite 600
                    Knoxville, Tennessee 37902
                    (865) 247-0080 Telephone
                    (865) 522-0049 Facsimile
                    greg@gregcolemanlaw.com
                    lisa@gregcolemanlaw.com
                    *by Pro Hac Vice*

                    B. Lance Entrekin
                    THE ENTREKIN LAW FIRM
                    One E. Camelback Road, Ste. 710
                    Phoenix, Arizona 85012
                    (602) 954-1123 Telephone
                    Lance@entrekinlaw.com

                    Shanon J. Carson
                    Russell D. Paul
                    BERGER & MONTAGUE, P.C.
                    1622 Locust Street
                    Philadelphia, PA  19103
                    (215) 875-3000 Telephone

(215) 875-4604 Facsimile
scarson@bm.net
rpaul@bm.net
*by Pro Hac Vice*

Jonathan Shub
SEEGER WEISS, LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
(215) 546-2300 Telephone
jshub@seegerweiss.com
*Pro Hac Vice pending*

***Attorneys for Plaintiffs and the Proposed Classes***