B. Lance Entrekin
The Entrekin Law Firm
One E. Camelback Road, Ste. 710
Phoenix, Arizona 85012
Phone: (602)954-1123
lance@entrekinlaw.com

*Attorneys for Plaintiffs Craig Adelman and Jason McGee*
*Additional attorneys listed on signature page*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Craig Adelman and Jason McGee, On behalf of themselves and all others situated,<br><br>        Plaintiffs,<br>V.<br><br>Rheem Manufacturing Company,<br><br>        Defendant. | No.  2:15-cv-00190<br><br>**LODGED: PROPOSED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT ATTACHED** |

# TABLE OF CONTENTS

I.    INTRODUCTION....................................................................................1

II.   FACTUAL BACKGROUND ................................................................3

III.  STANDARD OF REVIEW ...................................................................4

IV.   PLAINTIFFS' AMENDED COMPLAINT SHOULD BE SUSTAINED
      ...................................................................................................................5

      A.    PLAINTIFFS HAVE ALLEGED VIABLE CLAIMS FOR
            BREACH OF WARRANTY ........................................................5

            1.    Rheem's Express Warranty......................................................6

            2.    Rheem's Warranty Fails its Essential Purpose .........................7

            3.    Rheem's warranty is unconscionable. .......................................8

            4.    Plaintiffs and Class are intended beneficiaries of Rheem's
                  warranty. ...................................................................................11

            5.    Plaintiffs and Class have standing to assert a MMWA claim. .12

      B.    PLAINTIFFS' CONSUMER FRAUD CLAIMS SHOULD BE
            SUSTAINED...............................................................................13

            1.    The Amended Complaint Pleads Facts Which Preclude Applying
                  the Statute of Limitations to Plaintiffs' Consumer Fraud Claims.
                  ...................................................................................................13

                  a.    Plaintiff Adelman commenced this action within one year
                        from the date his consumer fraud claim accrued; thus, his
                        claim is timely.................................................................13

                  b.    Mr. McGee's consumer fraud claim is timely, as Rheem is
                        equitably estopped from asserting the statute of limitations.
                        ...................................................................................15

            2.    Plaintiffs adequately allege consumer fraud claims pursuant to
                  Rule 9(b). ...................................................................................16

            3.    Plaintiffs adequately allege causation.......................................19

1
2
3
4
5
6

B. Lance Entrekin
The Entrekin Law Firm
One E. Camelback Road, Ste. 710
Phoenix, Arizona 85012
Phone: (602)954-1123
lance@entrekinlaw.com

*Attorneys for Plaintiffs Craig Adelman and Jason McGee*
*Additional attorneys listed on signature page*

7
8
9
10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

11
12
13
14
15
16
17
18

| | |
|---|---|
| Craig Adelman and Jason McGee, On behalf of themselves and all others situated,<br><br>        Plaintiffs,<br>V.<br><br>Rheem Manufacturing Company,<br><br>        Defendant. | No.  2:15-cv-00190<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT** |

19
20
21
22
23
24
25
26
27
28

3.    Plaintiffs adequately allege causation. ......................................19

C.    PLAINTIFFS PROPERLY STATE A CLAIM FOR
      UNJUST ENRICHMENT IN COUNT V ....................................20

D.    PLAINTIFFS HAVE ALLEGED VIABLE
      DECLARATORY AND INJUNCTIVE RELIEF FAIL
      CLAIMS ..................................................................................22

      1.    Declaratory Relief ....................................................23

      2.    Injunctive Relief .......................................................24

V.    PLAINTIFFS NEED NOT PLEAD A MORE DEFINITE
      STATEMENT OF THEIR CLAIMS ..................................................24

VI.   CONCLUSION .................................................................................26

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*,
   188 F.R.D. 662 (S.D. Fla. 1999)............................................................ 21

*Alexander Hamilton Corp. v. Leeson*,
   508 So. 2d 513 (Fla. 4th DCA 1987)...................................................13

*In re Apple & AT & TM Antitrust Litig.*,
   596 F. Supp. 2d 1288 (N.D. Cal. 2008)...............................................17

*Baba v. Hewlett Packard Co.*,
   2012 U.S. Dist. LEXIS 154326 (N.D. Cal. 2012) ............................6, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................*passim*

*Omar ex rel. Cannon v. Lindsey*,
   334 F.3d 1246 (11th Cir. 2003) ...........................................................13

*Correa v. Pecos Valley Dev. Corp.*,
   617 P.2d 767 (Ariz. Ct. App. 1980).....................................................19

*Croman Corp. v. Gen. Elec. Co.*,
   No. 2:05-CV-0575-GEB-JFM, 2005 WL 2219261 (E.D. Cal.
   Sept. 12, 2005) .....................................................................................25

*Davis v. Powertel, Inc.*,
   776 So. 2d 971 (Fla. 1st DCA 2000), review denied, 794 So. 2d
   605 (Fla. 2001).....................................................................................20

*Doe v. Garcia*,
   5 F. Supp. 2d 767 (D. Ariz. 1998) ......................................................14

*Doe v. Roe*,
   955 P.2d 951 (Ariz. 1998) ...................................................................14

*Dunlap v. Jimmy GMC of Tucson, Inc.*,
   666 P.2d 83 (Ariz. Ct. App. 1983).......................................................19

*Erickson v. Pardus*,
　　551 U.S. 89 (2007)...........................................................................4

*Falk v. General Motors Corp.*,
　　496 F. Supp. 2d 1088 (N.D. Cal. 2007)............................................17

*Feuerstein v. Home Depot, U.S.A. Inc.*,
　　No. 2:12-cv-01062-JWS, 2014 U.S. Dist. LEXIS 78131 (D. Ariz.
　　June 6, 2014).................................................................................6

*Fitzpatrick v. General Mills, Inc.*,
　　635 F.3d 1279 (11th Cir. 2011) .................................................19, 20

*Florida DHRS v. SAP*,
　　835 So. 2d 1091 (Fla. 2002) ...........................................................15

*Florida v. Tenet Healthcare Corp.*,
　　420 F. Supp. 2d 1288 (S.D. Fla. 2005)............................................16

*Flory v. Silvercrest Industries*,
　　633 P.2d 383 (Ariz. 1981) .............................................................11

*Gastaldi v. Sunvest Communities USA, LLC*,
　　637 F. Supp. 2d 1045 (S.D. Fla. 2009)............................................16

*Grills v. Philip Morris USA, Inc.*
　　645 F. Supp. 2d 1107 (M.D. Fla. 2009)...........................................17

*Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*,
　　898 P.2d 964 (Ariz. 1995) .............................................................14

*Herhold v. Green Tree Servicing, LLC*,
　　No. 14-1422, 2015 U.S. App. LEXIS 6300 (6th Cir. 2015)................4

*Isofoton, S.A. v. Giremberk*,
　　No. CV-04-0798-PHX-ROS, 2006 WL 1516026 (D. Ariz. May
　　30, 2006) ......................................................................................21

*Jones v. GMC*,
　　640 F. Supp. 2d 1124 (D. Ariz. 2009) ..........................................8, 10

*Justice v. Rheem Manufacturing Co.*,
　　Civ. No. 14-80017 (S.D. Fla Dec. 11, 2014) ...............................18, 19

iv

*La Grasta v. First Union Sec., Inc.*,
　　358 F.3d 840 (11th Cir. 2004) ...................................................... 13

*Leas v. Gen. Motors Corp.*,
　　278 F. Supp. 661 (E.D. Wis. 1968) .................................................. 25

*Llado–Carreno v. Guidant Corp.*,
　　Civ. No. 09-20971, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011) ..................... 16

*Longnecker v. Am. Exp. Co.*,
　　No. 2:14-CV-0069-HRH, 2014 WL 1577522 (D. Ariz. Apr. 21,
　　2014) ........................................................................... 24

*Major League Baseball v. Morsani*,
　　790 So. 2d 1071 (Fla. 2001) ..................................................... 15

*Martinez v. United States*,
　　No. CIV 13-955-TUC-CKJ, 2014 WL 5792330 (D. Ariz. Nov. 6,
　　2014) ........................................................................... 24

*Martorella v. Deutsche Bank Nat. Trust Co.*,
　　931 F. Supp. 2d 1218 (S.D. Fla. 2013) ....................................... 21, 22

*Maxwell v. Fid. Fin. Servs.*,
　　907 P.2d 51 (1995) .............................................................. 10

*Mayo v. Ephrom*,
　　325 P.2d 814, 818 (Ariz. 1958) ................................................. 14

*Mazzeo v. Nature's Bounty, Inc.*,
　　No. 14-60580-CIV, 2015 WL 1268271 (S.D. Fla. Mar. 19, 2015) .................... 22

*McGuire v. Ryland Grp., Inc.*,
　　497 F. Supp. 2d 1347 (M.D. Fla. 2007) .......................................... 19

*McNutt v. Key Fin. Corp.*,
　　No. CV-09-01847-PHX-ROS, 2010 WL 3702509 (D. Ariz. Sept.
　　9, 2010) ........................................................................ 22

*Medimport S.R.L. v. Cabreja*,
　　929 F. Supp. 2d 1302 (S.D. Fla., 2013) ......................................... 16

*Michaels Building Co. v. Ameritrust Co., N.A.*,
　　848 F.2d 674 (6th Cir. 1998) ................................................... 17

v

*Mister Donut of America v. Harris*,
    723 P.2d 670 (Ariz. 1986) ............................................................... 14

*Neitzke v. Williams*,
    490 U.S. 319 (1989).......................................................................... 5

*Nelson v. Mead Johnson Nutrition Co.*,
    270 F.R.D. 689 (S.D. Fla. 2010).......................................................... 0

*Noll v. eBay, Inc.*,
    282 F.R.D. 462 (N.D. Cal. 2012)........................................................ 23

*PB Property Mangement, Inc. v. Goodman Manuf. Co.*,
    Civ No. 12-1366, ECF No 21 (M.D. Fla. Aug. 27, 2013) ................... 19

*Sandig v. Pliner*,
    No. 2:10-CV-02462 JWS, 2011 WL 742663 (D. Ariz. Feb. 24,
    2011) .............................................................................................. 22

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)........................................................................... 5

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*,
    427 F. App'x 714 (11th Cir. 2011), *rev'd in part sub nom.*, 563 F.
    App'x 665 (11th Cir. 2014)............................................................... 22

*State, Office of Attorney Gen., Dep't of Legal Affairs v. Commerce
    Commercial Leasing, LLC*,
    946 So. 2d 1253 (Fla. 1st DCA 2007) .............................................. 20

*Stutler v. T.K. Constructors*,
    448 F.3d 343 (6th Cir. 2006) ............................................................. 8

*Supermail Cargo, Inc. v. United States*,
    68 F.3d 1204 (9th Cir. 1995) ........................................................... 13

*Sw. Pet Prods. v. Koch Indus.*,
    107 F. Supp. 2d 1108 (D. Ariz. 2000) ................................................ 7

*In re TFT-LCD (Flat Panel) Antitrust Litig,.*
    MDL No. 1827, 2011 WL 4387812 (N.D. Cal. Sept. 20, 2011) ........ 15

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ........................................................... 13

vi

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    684 F. Supp. 2d 942 (N.D. Ohio 2009) ................................................................17

*Wilson v. Conair Corp.*,
    No. Civ No. 1:14-894 WBS BA, 2014 WL 4249514 (E.D. Cal.
    Aug. 27, 2014) ...............................................................................................25

**Statutes & Other Authorities**

15 U.S.C. § 2310(d)(1) ...........................................................................................12

28 U.S.C. § 2201 ...................................................................................................23

Fed. R. Civ. P. 8 .............................................................................................4, 21

Fed. R. Civ. P. 9 .............................................................................................1, 16

Fed. R. Civ. P. 57 ..........................................................................................2, 23

Fed. R. Civ. P. 65 ..........................................................................................2, 24

Fed. R. Civ. P. 12 ......................................................................4, 5, 16, 24, 25, 26

Arizona's Consumer Fraud Act ...............................................................1, 13, 19

A.R.S. § 12-541(5) ................................................................................................14

A.R.S. § 44–1522 .................................................................................................19

A.R.S. § 44-2335 ..................................................................................................11

Florida Deceptive and Unfair Trade Practices Act ........................................*passim*

Magnusson-Moss Warranty Act ............................................................................12

67A AM. JUR. 2D *Sales* § 843 (2003) ....................................................................8

vii

# MEMORANDUM OF LAW

## I.    INTRODUCTION

Rheem Manufacturing Company ("Rheem") supplied the Plaintiffs with defective HVAC systems. The copper evaporator and condenser coils in Rheem's HVAC units are too thin, designed and manufactured with improper materials, prematurely corrode, and develop holes and cracks resulting in refrigerant leaks. Amended Complaint ("AC"), ¶¶54-56; Factual Background *infra*. The AC satisfies a "short and plain statement of the claim showing that Plaintiffs are entitled to relief" as required under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Factual Background *infra*. Thus, Rheem's Motion to Dismiss the Amended Complaint ("Mot.") for failure to state a claim should be denied.  Furthermore, Rheem makes a number of erroneous arguments for dismissal.

First, Defendant argues that Plaintiffs have not alleged an actionable breach of warranty because Rheem complied with the limited warranty covering Plaintiffs' Rheem Units by providing, or agreeing to provide, replacement parts.  However,  Plaintiffs have sufficiently alleged that: 1) Rheem's warranty fails in its essential purpose (AC, ¶¶ 7-10, 76-79); 2) that Rheem's warranty is unconscionable (AC, ¶¶ 76-77); and 3) the limited remedy offered by Rheem's warranty does not bar the plaintiffs' from recovering other foreseeable direct damages. Plaintiffs have also sufficiently alleged the requisite privity because Rheem specifically offered its warranty for the intended end-use residential consumer of its HVAC Products.

Second, Defendant argues that Plaintiffs' claims for violation of the ACFA and FDUTPA must be dismissed because (1) each of the claims is barred by the applicable statute of limitations, (2) Plaintiffs fail to meet the standards of Fed. R. Civ. P. 9(b), and (3) Plaintiffs fail to properly plead  causation. However, a statute of limitations is generally not appropriate for evaluation on a motion to dismiss and there are factual ambiguities here that require resolution first.  Defendants also ignore the discovery rule

and Plaintiffs' allegations describing the methods by which Rheem continued to conceal the latent defect from Plaintiffs.  Further, Defendants, by virtue of their deliberate concealment of the latent defect, are equitably estopped from asserting the FDUTPA statute of limitations.  In addition, Rule 9(b) does not apply to FDUPTA claims and even if it did, the AC provides the required notice to satisfy Rule 9(b), alleging that Rheem knew that the design defects in its coils caused them to develop formicary corrosion, making them unreasonably susceptible to premature rupture and refrigerant leaks when used under normal conditions.  AC ¶¶ 4, 5, 54, 146. Defendant's causation argument also fails because a plaintiff need only allege that an objectively reasonable person would have been deceived by the false statement and direct reliance is not required.

Third, Defendant argues that Plaintiffs' claim for unjust enrichment is barred by the existence of the Warranty, is duplicative of other legal claims asserted by Plaintiffs, and that Plaintiffs cannot allege a lack of remedy at law.  However, Plaintiffs are permitted to plead the claim for unjust enrichment in the alternative to their other claims and because Rheem has challenged the existence of an express warranty running to Plaintiffs.

Fourth, Defendant argues that declaratory and injunctive relief are not independent causes of action and that Plaintiffs' declaratory relief claim fails because it duplicates Plaintiffs' other claim. However, Rheem's position is in direct contravention of Fed. R. Civ. P. 57, which provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate" and Fed. R. Civ. P. 65, which grants federal courts the authority to issue injunctive relief in appropriate cases.

Fifth, Defendant argues that Plaintiffs must provide a more definite statement because Plaintiffs purportedly did not identify the defect on which they base their claims. However, Rheem cannot plausibly assert that it cannot ascertain the nature of Plaintiffs' claims or frame a responsive pleading.

///

2

1      ///

2      ## II.     <u>FACTUAL BACKGROUND</u>

3          This class action was initiated by two consumers on behalf of themselves and all

4      persons and/or entities who purchased air conditioners, air handlers and heat pumps

5      manufactured by Defendant Rheem Manufacturing Company, or who own a home or

6      other structure in which the Rheem Products were installed, and who have been

7      damaged by defective design and/or manufacturing of the Rheem Products.  Each

8      Plaintiff has suffered damages related to the leakage of refrigerant due to the failure of

9      Rheem Products.

10         A properly operating and properly designed and manufactured HVAC "is a sealed

11     system that should never 'use up' or run out of refrigerant . . .. [The refrigerant] is not

12     consumed in the process of cooling. Thus, the only way refrigerant is lost is through a

13     leak in the system." AC, ¶53.  There is no question that Plaintiffs' Rheem condenser or

14     evaporator coils leaked. For example, Plaintiffs explain that after an earlier evaporator

15     coil leak and failure, a service technician found that Mr. Adleman's "condenser coil was

16     completely depressurized, indicating a leak in the system." AC, ¶18. Both the evaporator

17     coil and condenser coil failed before Mr. Adelman's Rheem HVAC system was even five

18     years old.  AC, ¶¶ 15-22. Likewise, when Mr. McGee's air conditioning failed when his

19     Rheem HVAC system was less than a year old, a technician "performed a vacuum check

20     on [his] system for a period of several days. They discovered that his evaporator coil was

21     leaking and had to be replaced." AC, ¶¶ 27-28. As non-moving parts, the coils of an

22     HVAC should not fail within the system's expected useful life of approximately 15 years

23     (AC, ¶¶47-55).

24         When Rheem manufactured the defective evaporator and condenser coils, they

25     were defectively designed, manufactured and engineered such that the coils are too thin,

26     prematurely corrode or otherwise fail under ordinary and expected conditions, and cannot

27     withstand the pressure of the refrigerant which flows between the two sets of coils (one

28     inside, one outside) to do the "work" of the Rheem HVAC system. AC, ¶¶4-5.  Although

                                        3

refrigerant should never leak during the expected life of a properly designed and manufactured HVAC system, the Rheem Products leak, often shortly after installation. Leakage problems with the Rheem Products are prevalent, widespread, and are not unique to the individual products purchased by Plaintiffs. AC, ¶¶5, 84-85.

As a result of Rheem's limited parts-only warranty, Plaintiffs and other consumers are forced to expend significant sums of money for repairs—even when the product is still "under warranty"—when their Rheem Products prematurely fail. Despite Rheem's claims that it offers "great warranties, and excellent service and support," (AC, ¶65), the lion's share of costs are borne by the consumers—for service calls, diagnostics, shipping of parts, labor, and replacement refrigerant—and exceed the cost of the parts which Rheem is willing to replace under its self-described "great warranties." AC, ¶¶70, 79. Even if a "parts only" warranty is not necessarily illegal as a matter of law, Rheem's insufficient limited remedy leaves consumers in a far worse position financially than if the product had functioned as promised. AC, ¶89. In this case Rheem knowingly and intentionally concealed the Rheem Products' defect. Such conduct violates the warranty and consumer protection laws of the home states of the Plaintiffs and of the putative Class members.

### III.   STANDARD OF REVIEW

When a District Court decides a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *E.g., Herhold v. Green Tree Servicing, LLC*, No. 14-1422, 2015 U.S. App. LEXIS 6300, at *5 (6th Cir. 2015). Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 556  (internal citations omitted). Pursuant to Fed. R. Civ. P. 12(b)(6), when deciding a Motion to Dismiss "a judge must accept as true all of the factual

allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted). In *Twombly*, the U.S. Supreme Court further defined the pleading requirements and instructed that a complaint must include "enough factual matter (taken as true) to suggest" that the plaintiff will be able to meet the required element of the given legal claim. 550 U.S. at 556.

To survive a motion to dismiss, a complaint is adequate if it identifies enough "facts that are suggestive enough to render [the legal elements] plausible." *Id.* Rule 8 does not "impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.*; *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a complaint may proceed even if it appears "that a recovery is very remote and unlikely"). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 546.

## IV. <u>PLAINTIFFS' AMENDED COMPLAINT SHOULD BE SUSTAINED</u>
### A. <u>PLAINTIFFS HAVE ALLEGED VIABLE CLAIMS FOR BREACH OF WARRANTY</u>

Rheem marketed and sold products that it knew were defective at the time of manufacture; however, at no time did it disclose the defect to unsuspecting consumers. AC, ¶¶56, 63. Rheem now attempts to disclaim all of its liability for the known defect other than its replacement of defective parts with equally defective parts. *See* Mot. at 8. Plaintiffs have sufficiently alleged that: 1) Rheem's warranty fails in its essential purpose (AC, ¶¶7-10, 76-79); 2) Rheem's warranty is unconscionable (AC, ¶¶76-77); and 3) the limited remedy offered by Rheem's warranty does not bar the plaintiffs' from recovering other foreseeable direct damages.

///

1

2                           **1.      Rheem's Express Warranty**

3              Rheem criticizes the Plaintiffs for allegedly "bas[ing] their claims on the opinions,

4    recommendations, and other statements of third party sellers and installers," Mot. at 10,

5    n.8, insinuating that the Plaintiffs are attempting to use "such statements" to create an

6    express warranty. *Id.* Here, Rheem's reliance on *Feuerstein v. Home Depot, U.S.A. Inc.*,

7    No. 2:12-cv-01062-JWS, 2014 U.S. Dist. LEXIS 78131 (D. Ariz. June 6, 2014), is

8    misplaced. Unlike *Feuerstein* (where the plaintiff relied on a Home Depot employee's

9    statement that the product was "a good ladder"), here Rheem never sells nor services its

10   own HVAC Products. Consumers must rely on their sellers, installers, and service

11   technicians to provide warranty and repair services and its own warranty directs

12   consumers to third parties when the products fail. Rheem's warranty states, "You must

13   promptly report any failure covered by this Limited Warranty to *the installing contractor*

14   *or distributor*." (AC, Exhibit C, p. 2) emphasis added. Additionally, like the warranty at

15   issue in the *Feuerstein* matter, Rheem warrants their products will be free from "defects

16   in materials and workmanship." *Compare id.* at *22 [finding that the product only

17   warranted defects in materials and workmanship, not failure to provide adequate

18   warning] *to* Rheem Warranty, (AC, Exhibit C).  In the matter before the Court, the

19   Plaintiffs assert exactly that—that the Rheem coils are defective in materials and

20   workmanship from the date of manufacture. *See, e.g.,* AC, ¶¶ 55-56, 58-59, 63.

21             Next, Rheem argues that this matter is similar to *Baba v. Hewlett Packard Co.,*

22   2012 U.S. Dist. LEXIS 154326 (N.D. Cal. 2012)[1]; yet in that matter, the computer

23   company took exactly the corrective actions that the Plaintiffs here are seeking. AC, at

24   53-54. Specifically, after selling computers with a "crazy cursor" in 2008, "[i]n January

25   2009, HP issued advisories to its engineers and service providers describing the problem

26

27   _____

     [1]  Rheem's assertion that *Baba* was decided "under Arizona law" is not accurate. The
28   Court in *Baba* specifically states: "It is unclear which law should apply in evaluating this
     claim." *Baba*, at *17.

1  and the proposed solution . . . [and]  posted a notice to customers through its website

2  advising them of the problem and inviting them to contact HP service and support for

3  assistance." *Id.* at *1-4. In contrast, although Rheem was aware as early as 2005[2] that

4  their product had a problem of premature copper coil failure due to formicary corrosion,

5  Rheem continued (and possibly continues) to sell these defective coils (AC, ¶59) while

6  heralding their products' quality, efficiency and reliability. AC, ¶46. In addition, in *Baba*,

7  the company was not aware of the defect at the time of sale, notified consumers of the

8  problem soon after it was discovered, and extended the Arizona plaintiff's warranty at no

9  cost.  The consumer in *Baba* did not follow through with the offered repair. *Baba*, at *22.

10  Here, Rheem sold the HVAC systems knowing that the coils (which should never leak)

11  were prone to premature failure (AC, ¶55) and knowing that consumers would bear the

12  lion's share of the costs of repair due to the Company's self-serving limited warranty.

13  AC, ¶¶62, 65.

14  **2.  Rheem's Warranty Fails its Essential Purpose**

15  Plaintiffs sufficiently allege Rheem's affirmation that its products have

16  "Guaranteed Dependability" (AC, ¶25), are "[t]op-quality, innovative products with the

17  latest technology, dependable performance, great warranties and excellent service and

18  support." AC, ¶66.  These claims are patently false, based on Plaintiffs' own experiences

19  and the experiences of other consumers. AC, ¶¶83-85. Rheem breached its warranty by

20  failing to deliver products that lived up to its promise of reliability to consumers.

21  In the *Southwest Pet Products* case cited by Rheem, the court explained that "a

22  remedy that fails its essential purpose . . . is a remedy that provides for the repair or

23  replacement of defective parts. Implicit in the terms of the contract is the presumption

24  that the defect can be cured by replacement or repair." *Sw. Pet Prods. v. Koch Indus.*, 107

25  F. Supp. 2d 1108, 1115-16 (D. Ariz. 2000) (internal citations omitted). Here, as alleged

26  by the Plaintiffs, the replacement of a defective copper coil with an equally defective

27  _____

28  [2] The date of Rheem's knowledge of the defect is an issue for which additional discovery is necessary.

7

copper coil does not "cure" the defect but instead postpones the second or subsequent manifestation of the defect. AC, ¶78; *see also* AC, ¶84 ("I have a high efficiency Rheem AC Prestige unit which is roughly 4 years old. I have had to fill the freon three times already at a cost of [$]300 per occurrence. Also, in February 2014, I went ahead and replaced the coil with a brand new Rheem coil, paid [$]450.00 for labor/installation and guess what, it is currently leaking out again. It appears that this seems to be a recurring issue with Rheem units."). Regardless, the Plaintiffs and consumers are left with an HVAC system which is unlikely to operate properly for the expected (and promised) life of the product. AC, ¶47.

Federal Rule of Civil Procedure Rule 8 does not "impose a probability requirement at the pleading stage" but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Twombly,* 550 U.S. at 556. The Plaintiffs have met this burden, which is likely to be well-supported by additional discovery about the timing and extent of Rheem's knowledge of the product defects, and the company's decision to shift of the cost of the known defects to Plaintiffs and consumers through its warranty limitations rather than expend the resources necessary to provide Plaintiffs and Class with non-defective coils.

### 3.    <u>Rheem's warranty is Unconscionable.</u>

A warranty limitation may be unconscionable when a defect is latent and the manufacturer knows that the product's effectiveness is questionable. Warranty unconscionability is a matter of state law. *E.g. Stutler v. T.K. Constructors*, 448 F.3d 343, 345 (6th Cir. 2006); 67A AM. JUR. 2D *Sales* § 843 (2003) ("A limitation of remedy that is deemed unconscionable is void."). A warranty can be either procedurally unconscionable, substantively unconscionable or both. "Procedural or process unconscionability is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Jones v. GMC*, 640 F. Supp. 2d 1124, 1130 (D. Ariz. 2009) (internal citation omitted).

Here, the Plaintiffs have alleged facts sufficient to establish procedural unconscionability. Namely, Rheem was aware of its coil defects prior to Plaintiffs' purchase of the defective Rheem Products, and that Rheem did not disclose these important facts to Plaintiffs and other consumers (*i.e.* the known defective coils that would prematurely fail (AC, ¶¶56-57) that would cost consumers hundreds or thousands of dollars out of pocket (AC, ¶¶ 60-62)). Rheem's parts-only limitation on its warranty for consumers led to unfair surprise at the out-of-pocket costs they would expend for failed coils. AC, ¶19-20, 28-29. The critical warranty limitations that might have forewarned consumers of the costs were hidden in fine print clauses in Rheem's warranty, buried in the middle of a page of 8-point or smaller font. AC Ex. C. Finally, Rheem's failure to notify consumers of important facts, as discussed further *supra.*, is unconscionable. Specifically, despite its sale of defective copper coils, Rheem deceptively advertised its products as both "dependable" and having "great warranties." AC, ¶66. As alleged in the Amended Complaint, Rheem advertises: "*We simply offer the finest air conditioning solutions in the business. Top-quality, innovative products with the latest technology, dependable performance, great warranties and excellent service and support. All of this is why we confidently say, 'Relax, It's Rheem.'*"[3] *Id.* Rather than meeting its promises, the Rheem Products cost Plaintiffs and consumers expensive out-of-pocket costs including diagnostics, refrigerant, labor, and shipping to repair the defects even though their product is still "under warranty."  AC, ¶¶16, 20-21, 70, 79, 84.

Additionally, Rheem's warranty is substantively unconscionable. "'Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed.' Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Jone,* 640 F. Supp. 2d at 1131-32 (internal citation omitted). Rheem's contract

---

[3]  http://www.rheem.com/products/heating_and_cooling/air_conditioners/, last accessed on May 19, 2015.

9

of adhesion favors Rheem and its profits to the extreme detriment of consumers. Plaintiffs and class members had no opportunity to negotiate the terms of the warranty or to negotiate the terms of the purchase directly with Rheem.  Even if they were made aware of the warranty's "parts only" limitations, Plaintiffs and class members were unaware that the diagnostic costs, labor costs, and refrigerant costs of an in-warranty repair would cost them hundreds if not thousands of dollars out-of-pocket to replace a defective coil. If they had known this imbalance in the warranty-repair obligations, Plaintiffs and consumers would not have purchased Rheem Products. AC, ¶¶23, 29. Finally, the latent defects in Rheem Products typically do not manifest themselves for months or years after the installation. AC, ¶78. Because Rheem limited its warranty to cover only parts—not diagnosis, labor, refrigerant, or increased electricity bills—when the company knew its coils were defective at the time of sale, and concurrently falsely touted their system as "*Top-quality, innovative products with the latest technology, dependable performance, great warranties and excellent service and support*[]," (AC, ¶66) their warranty is both procedurally and substantively unconscionable. *See, e.g., Jones v. GMC.*

Finally, under Arizona law "a claim of unconscionability can be established with a showing of substantive unconscionability alone, especially in cases involving either price-cost disparity or limitation of remedies." *Maxwell v. Fid. Fin. Servs.*, 907 P.2d 51, 59 (1995). Here, in diagnostic, refrigerant, labor and shipping costs to repair an "under warranty" Rheem HVAC system, in just over four years Mr. Adelman spent $1887.71 on a product that originally cost $6370.00. AC, ¶¶11, 14, 21. In other words, in under 5 years, he spent almost 30% of the total cost of his HVAC on repairs. As allowed under Arizona law, the substantive unconscionability alone is enough to support the Plaintiffs' claims that Rheem's warranty is unconscionable.

///

///

///

10

**4.      Plaintiffs and Class are intended beneficiaries of Rheem's warranty.**

Despite the language of its own warranty, Rheem illogically asserts that "Plaintiffs fail to plead the requisite privity to maintain breach of warranty claims under Arizona law and the MMWA." Mot. at 15. Rheem cites *Flory v. Silvercrest Industries*, 633 P.2d 383 (Ariz. 1981), yet the Court in that case explains that the "seller's warranties to which [A.R.S. § 44-2335] refers are in this case the warranties made by Alamo to Florys in connection with their sales contract. . . . A.R.S. § 44-2335 does not *create* warranties on the part of Silvercrest or other remote manufacturers." *Flory* at 387-88.   Here, the warranty at issue was not "created" by the distributors or installers but was specifically offered by the manufacturer for the intended end-use residential consumer of its HVAC Products. AC Ex. C, p.2.

In addition, Rheem erroneously asserts that a "manufacturer's warranty cannot form the basis for a breach of warranty claim under the Arizona UCC where the plaintiff purchased the product at issue from a third party," Mot. at 16, citing *In re Minn. Breast Implant Litig. v. McGhan Med. Corp*., 36 F. Supp. 2d 863, 874 (D. Minn. 1998). As the Court in that matter clearly explains:

> [T]he Arizona Supreme Court held that a claim for breach of an implied warranty first requires that the defendant be *in either the manufacturing or distributing chain of the product* in question. In the present case, 3M neither manufactured nor sold Plaintiffs' breast implants. . . . Because McGhan III manufactured and sold Plaintiffs' implants, 3M is not the "seller" as defined under the Uniform Commercial Code. . . . Thus, Plaintiffs' express warranty claims against 3M must be dismissed.

*Id.* at 874 (emphasis added). Thus, in that case, the manufacturer in question had not manufactured nor distributed the product in question. Here, Rheem was the manufacturer of all of the Plaintiffs' defective evaporator and condenser coils with the exception of the ADP evaporator coil, which upon information and belief, was provided to Mr. Adelman

11

by a Rheem distributor as a part of his Rheem warranted HVAC Product. AC, ¶¶11-23.[4] Rheem's assertion that the Plaintiffs are not in privity with the manufacturer, if true, would render almost all express warranties for consumer products meaningless as very few manufacturers who offer written warranties also sell their products directly to consumers.

Finally, Rheem's assertion that Plaintiffs' and the Class' "lack of privity precludes recovery for breach of express or implied warranty" with a footnote claiming that Plaintiffs "haphazardly plead boiler plate allegations" is wholly unsupported by the Amended Complaint, and even more importantly, unsupported by the both the selected paragraphs cited by the Defendant and paragraphs immediately adjacent to their handpicked selections. *See, e.g.* AC, ¶¶121-124. Between citing case law which abjectly does not support its arguments regarding privity issues and the misrepresentation of the Amended Complaint, Rheem's claims that the Plaintiffs "cannot establish privity" fail. Counts III, IV, and VI should not be dismissed.

### 5.   Plaintiffs and Class have standing to assert a MMWA claim.

As Rheem readily admits, the Magnusson-Moss Warranty Act ("MMWA") "provides a federal cause of action for state warranty claims [.]" Mot. at 17. As discussed *supra*, Plaintiffs have viable express warranty claims, and thus, have a viable MMWA claim. Despite Defendant's contention that Plaintiffs have no standing to assert a claim (Mot. at 16), this argument has no basis in law.

Under the MMWA, Plaintiffs must show that they are "consumers who are damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty . . .." 15 U.S.C. § 2310(d)(1).

---

[4]   At the time of purchase, Mr. Adelman was unaware that his evaporator coil was not a Rheem Product but he was provided with an AHRI Certification that his system was properly matched. AC, ¶12. However, Rheem's warranty language includes even "non-matching coils." AC, ¶¶21-23. The same Rheem installer/distributor replaced his defective ADP evaporator coil. AC, ¶15. Nevertheless, Mr. Adelman's Rheem manufactured condenser coil failed as well. AC, ¶18.

Here, the Plaintiffs have sufficiently pled facts to support their contention that Rheem's warranty was breached when the remedy failed its essential purpose and was unconscionable.

### B.   **PLAINTIFFS' CONSUMER FRAUD CLAIMS SHOULD BE SUSTAINED**

#### 1.   **The Amended Complaint Pleads Facts Which Preclude Applying the Statute of Limitations to Plaintiffs' Consumer Fraud Claims.**

Rheem seeks dismissal of Plaintiffs' consumer fraud claims based upon the statute of limitations, even though the statute of limitations is generally not appropriate for evaluation on a motion to dismiss.  *See e.g. Alexander Hamilton Corp. v. Leeson*, 508 So. 2d 513 (Fla. 4th DCA 1987)(per curiam) ("The purpose of a motion to dismiss is to test whether a plaintiff has alleged a good cause of action in the complaint and, therefore, consideration of defendant's affirmative defenses or the sufficiency of the evidence is irrelevant and immaterial in deciding a motion to dismiss.").  A motion to dismiss based upon the statute of limitations should be denied unless from the face of the complaint it is apparent that the claim is time barred, and it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 201 0); *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004); *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).  In other words, a motion to dismiss on statute of limitations grounds should be denied where resolution depends either on facts not yet in evidence or on construing factual ambiguities in the complaint in defendants" favor.  *Omar ex rel. Cannon v. Lindsey,* 334 F.3d 1246, 1252 (11th Cir. 2003).

#### a.   **Plaintiff Adelman commenced this action within one year from the date his consumer fraud claim accrued; thus, his claim is timely.**

By seeking recovery pursuant to Arizona's Consumer Fraud Act ("ACFA"), Plaintiff Adelman had one year from the date the cause of action accrued to commence

an action.  A.R.S. § 12-541(5).  Plaintiff Adelman's ACFA claim did not accrue until he knew or, in the exercise of reasonable diligence, should have known the facts underlying his claim.  *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995).   When discovery occurs and a cause of action accrues are ordinarily questions of fact for the jury.[5]  *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998); *see also Doe v. Garcia*, 5 F. Supp. 2d 767, 774 (D. Ariz. 1998) ("Application of the discovery rule often depends on resolution of such factual issues and the trial court's function is not to resolve disputed facts.").

Rheem argues, without citation, that Plaintiff Alderman's ACFA claim accrued as a matter of law on the date the first condenser coil failed,[6] Mot. 17-18, while completely

---

[5]   Rheem contends that comments posted on the internet about refrigerant leaks in connection with Rheem products provided Plaintiff with notice of his claim against Rheem.    at 18 n.12.  The allegations refer to leaks and other problems with Rheem products; the only mention of formicary corrosion was posted in a forum devoted to professional HVAC technicians and was dated September 30, 2013.  On that date, Mr. Alderman's unit appeared to be in good working condition.  The remaining comments do not state anything about whether the leaks were caused by formicary corrosion, whether Rheem knew the leaks were caused by formicary corrosion, whether Rheem failed to disclose that the leaks were caused by formicary corrosion, whether Rheem drafted its Limited Warranty to reduce its exposure to claims based upon leaks resulting from formicary corrosion or whether Rheem replaced defective coils with equally defective coils.  Discovery is warranted to establish what Mr. Alderman knew and when, especially because Rheem continued to conceal facts surrounding Plaintiff's claim.  *See e.g. Mister Donut of America v. Harris*, 723 P.2d 670, 673 (Ariz. 1986) (holding that the statute of limitations did not begin to run until the claimants were aware of specific facts that would lead them to  suspect fraud); *Mayo v. Ephrom*, 325 P.2d 814, 818 (Ariz. 1958) (plaintiff who makes only partial investigation and is deceived by representations of adverse party has right to rely on such representations).

[6]  Rheem's theory that a single warranty claim is sufficient to accrue a cause of action, if adopted, would force a consumer to commence an action every time it filed a warranty claim, even if the warranty repair appeared successful, in order to protect its rights in case the same latent defect caused the product to fail in the future.  Not only would this result in an unnecessary burden on the courts, and a waste of judicial resources, but it would also increase the litigation costs to manufacturers such as Rheem, presumably resulting in manufacturers increasing the cost of their products.  Rheem's argument also contradicts arguments made by Rheem where it argues that it did not breach the warranty, because it provided a replacement the coil.  *See* Mot. at 8-10.  Rheem cannot have it both ways.

ignoring the allegations describing the methods by which Rheem continued to conceal the latent defect from Plaintiff by knowingly replacing his coil with another defective coil containing the same latent defect.  AC, ¶¶ 15, 65, 95.  Mr. Alderman had no way of knowing or discovering that the replacement coil was defective.  *Id.* ¶ 111.

Mr. Alderman filed a warranty claim and it was reasonable for him to believe that Rheem fixed the problem, because after the defective replacement coil was installed, the unit appeared to be working properly for a few years, eventually ceasing to cool on June 6, 2014.  *Id.* ¶ 16.  A few months later, on December 16, 2014, the HVAC technician performed a leak test and diagnosed the problem as a leaking coil.  *Id.* ¶ 18.  Assuming that Plaintiff Alderman's claim accrued the second time the coil failed, this action was commenced within one year of that date, and, therefore, from the face of the complaint his claim is timely.  At the minimum, the various dates involved, and the information disclosed to Mr. Alderman on those dates create factual issues, the resolution of which require discovery.  Accordingly, the motion should be denied.

**b.** **Mr. McGee's consumer fraud claim is timely, as Rheem is equitably estopped from asserting the statute of limitations.**

Mr. McGee's claim pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is also timely.  Although Mr. McGee commenced this action more than four years after he purchased the coil, the Amended Complaint contains ample factual basis from which to conclude that the FDUTPA statute of limitations has been nullified through the doctrine of equitable estoppel.  *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076 (Fla. 2001).  Fraudulent concealment is a "species" of equitable estoppel, and the acts of concealment have satisfied the elements of estoppel.  *Florida DHRS v. SAP*, 835 So. 2d 1091, 1095 (Fla. 2002); *see also In re TFT-LCD (Flat Panel) Antitrust Litig,*.  MDL No. 1827, 2011 WL 4387812 *2 (N.D. Cal. Sept. 20, 2011)(discussing fraudulent concealment and equitable estoppel under Florida law).  Fraudulent concealment is applicable where, as here, a defendant takes steps to conceal his wrongful actions, thereby preventing a plaintiff from filing suit on time.  *Id.*

The Amended Complaint contains several allegations establishing that Rheem took active steps before and after the sale to prevent Plaintiff McGee from discovering the latent defect in Rheem coils.  Before the sale, Rheem concealed the defective nature of its coils.  AC,¶ 29, 64.  After the sale, Rheem took additional steps to conceal the defective nature of its coils, while attempting to absolve itself of liability for the defect.

Mr. McGee's unit ceased cooling within six months of installation, so he sought coverage under Rheem's warranty.  He was informed that the defective coil was not covered under Rheem's warranty, so he purchased an extended warranty from a third party.  *Id.* ¶ 27.  The original defective coil was replaced, but the replacement coil contained the same latent defect as the original coil.[7]  *Id.* ¶¶ 6-7, 28.  The replacement coil was also unreasonably susceptible to formicary corrosion, and Rheem knew that at the time the coil was replaced.  *Id.* ¶¶ 7, 111.  Rheem's conduct makes a prima facie case of equitable estoppel which precludes Rheem's Rule 12 motion.

## 2.  Plaintiffs adequately allege consumer fraud claims pursuant to Rule 9(b).

Rheem's attack on the Amended Complaint on the grounds of an asserted lack of specificity under Fed. R. Civ. P. 9(b) is misplaced. First, Rule 9(b) does not apply to FDUPTA claims even if fraud is pled in the Complaint.[8]   *Gastaldi v. Sunvest Communities USA, LLC,* 637 F. Supp. 2d 1045, 1059 (S.D. Fla. 2009); *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302 (S.D. Fla., 2013).  The "FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud, and therefore, 'the plaintiff need not prove the elements of fraud to sustain an action under the statute.'" *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310

---

[7]  The allegations in the Amended Complaint create this inference.  Mr. McGee's coil was replaced in 2011; Rheem did not introduce aluminum coils until 2013.  AC, ¶¶ 6-7, 27.

[8]  There is a split in the Southern District of Florida, as other courts have reached the opposite result.  *Llado–Carreno v. Guidant Corp.*, Civ. No. 09-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011).  If this Court decides that Rule 9(b) applies, Plaintiff met the heightened pleading standard as set forth below.

1   (S.D. Fla. 2005).  Because Rule 9(b) does not apply to FDUTPA claims, its requirements

2   cannot serve as a basis to dismiss those claims.

3       Second, Rule 9(b) does not require a plaintiff to be "omniscient." *Michaels*

4   *Building Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 680 (6th Cir. 1998).  A plaintiff

5   "need not prove [his] allegations in the complaint but must provide particular facts so the

6   Court is not 'left wondering whether a plaintiff has offered mere conjecture or a

7   specifically pleaded allegation on an essential element of the lawsuit.'" *Grills v. Philip*

8   *Morris USA, Inc.* 645 F. Supp. 2d 1107, 1121 (M.D. Fla. 2009) (*quoting Mitchell v.*

9   *Beverly Enters*., 248 Fed. App'x. 73, 75 (11th Cir. 2007) (q*uoting United States ex rel.*

10  *Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 & n. 23 (11th Cir. 2002)).[9]

11      In a failure to disclose claim, the pleading standards are relaxed, because

12  "[c]learly, a plaintiff in a fraud by omission suit will not be able to specify the time, place

13  and specific content of an omission as precisely as would a plaintiff in a false

14  representation claim."  *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99

15  (N.D. Cal. 2007); *see also In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288,

16  1310 (N.D. Cal. 2008) ("Where the claim is one of fraud by omission ..., the pleading

17  standard is lowered on account of the reduced ability in an omission suit 'to specify the

18  time, place, and specific content' relative to a claim involving affirmative

19  misrepresentations.").  "Requiring a plaintiff to identify (or suffer dismissal) the precise

20  time, place, and content of an event that (by definition) did not occur would effectively

21  gut state laws prohibiting fraud-by-omission." *In re Whirlpool Corp. Front-Loading*

22  *Washer Prods. Liab. Litig.,* 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009).  In cases such as

23  this where discovery has not commenced, courts have been reluctant to dismiss a claim

24  where the facts underlying the claims are within the defendant's control.  *Michaels Bldg.*

25  *Co.*, 848 F.2d at 680.

26  ────────────────
27  [9] In a footnote, Rheem argues that the statements in the Amended Complaint are non actionable puffery.  *See* Mot. at 20 n.14.  This argument ignores the fundamental basis of this case – Rheem knew, but failed to disclose, that its coils contained a latent defect, and
28  after the sale continued to conceal the defect.

17

The Amended Complaint provides the required notice to satisfy Rule 9(b).   It alleges that Rheem knew that the design defects in its coils caused them to develop formicary corrosion, making them unreasonably susceptible to premature rupture and refrigerant leaks when used under normal conditions.  AC, ¶¶ 4, 5, 54, 146.  Despite this knowledge, Rheem did not inform its customers of the coils' susceptibility to formicary corrosion, or its causes.  *Id.* ¶¶ 8, 23, 29, 56.  Instead, Rheem represented and warranted through oral and written statements, descriptions, and affirmations of fact through its website, print advertising, marketing materials and its written warranties that the Rheem products were fit for their intended purposes.  *Id.* ¶¶ 46, 66, 67, 143.[10]

When the latent defect caused the coil to leak and eliminate the unit's ability to provide cold air within the warranty period, and Rheem replaced the defective coil, the replacement coil contained the same latent defect and was equally susceptible to formicary corrosion, and likely to prematurely rupture and leak refrigerant under normal use.  *Id.* ¶ 7.  Plaintiffs did not and could not have discovered the defects at the time of purchase, delivery, or replacement.  *Id.* ¶¶ 111.  If Plaintiffs had known that Rheem products contained defective coils, Plaintiffs would not have purchased them.  *Id.* ¶ 167.

Similar allegations involving defective Rheem evaporator coils were deemed sufficient to meet the pleading standard of  Rule 9(b) in a case currently pending in the United States District Court for the Southern District of Florida,  *Justice v. Rheem Manufacturing Co.*, Civ. No. 14-80017, *9-10 (S D. Fla Dec. 11, 2014) (Dimitrouleas, J.).  Rheem raised, and the court rejected, the exact arguments that it raises here, namely, that Plaintiffs "impermissibly rely solely on 'labels and conclusions.'"  *Id.*  The court held that allegations that "Rheem knew or should have known of the defects, did not disclose the defects to consumers, warranted that its products were free from defects, and limited Plaintiffs' ability to seek relief under the warranty" were "sufficient allegations of

---

[10] Rheem's assertions that Plaintiffs did not view any representations of Rheem regarding its coils is misplaced, as both Plaintiffs allege what they saw and when they saw it.  *See e.g.* AC, ¶¶ 13, 25, 26, 66, 67.

1  misrepresentation and deception such that they create an issue of fact." *Id.* (citing *Suris*

2  *v. Gilmre Liquidating, Inc.*, 651 So. 2d 1282, 1282 (Fla 3d DCA 1995) (holding that the

3  plaintiff had sufficiently alleged misleading and deceptive acts to create an issue of fact

4  for the jury)).  *Justice* is directly on point[11]; the particularity requirements are met.  The

5  motion should be denied.  *Id.*

6  ### 3.   **Plaintiffs adequately allege causation.**

7  Rheem contends that Plaintiffs' allegations that they "were 'exposed' to purported

8  representations and omissions and, as a result, they were somehow 'deceived' simply do

9  not adequately plead legal causation. . . ."  Mot. at 22.

10  The Arizona Consumer Fraud Act provides an injured consumer with an implied

11  private right of action against the violator of the act. A.R.S. § 44–1522; *Dunlap v. Jimmy*

12  *GMC of Tucson, Inc.*, 666 P.2d 83, 87 (Ariz. Ct. App. 1983). The elements of such

13  private cause of action are "a false promise or misrepresentation made in connection with

14  the sale or advertisement of merchandise and the hearer's consequent and proximate

15  injury." *Id.*  Damage or injury occurs when the consumer relies on the misrepresentation

16  even though the reliance is not reasonable. *Correa v. Pecos Valley Dev. Corp.*, 617 P.2d

17  767, 771 (Ariz. Ct. App. 1980).

18  The elements of a claim under the FDUTPA are:  a deceptive act or unfair

19  practice; (2) causation; and (3) actual damages. *McGuire v. Ryland Grp., Inc.*, 497 F.

20  Supp. 2d 1347, 1355 (M.D. Fla. 2007) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860,

21  869 (Fla. 2nd DCA 2006)).  The FDUPTA does not require each plaintiff to rely on a

22  false statement to establish causation.  *See, e.g., Fitzpatrick v. General Mills, Inc.*, 635

23

24  ---

[11]  Rheem's citation to *PB Property Mangement, Inc. v. Goodman Manuf. Co.*, Civ No.

25  12-1366, ECF No 21, (M.D. Fla. Aug. 27, 2013) (Schlesinger, J.),  supports a finding the
Plaintiffs pled their consumer fraud claims with the requisite particularity.  In *PB*

26  *Property Management, Inc*, the court found the complaint lacked allegations stating
"when Plaintiff viewed the alleged misrepresentations on Defendants' website, or even

27  whether it – or any other consumer – viewed them at all before purchasing the allegedly
defective products.  *Id.* at *13-14.  Here, Plaintiffs alleged that they reviewed statements

28  before purchasing the defective Rheem products.  ECF No. 19 ¶¶ 13, 25, 26.

F.3d 1279, 1283 (11th Cir. 2011); *Davis v. Powertel, Inc*., 776 So. 2d 971, 973 (Fla. 1st DCA 2000), review denied, 794 So. 2d 605 (Fla. 2001) ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); *State, Office of Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."). To establish causation, a plaintiff need only allege that an objectively reasonable person would have been deceived by the false statement. *Fitzpatrick*, 635 F.3d at 1283. Indeed, a deceptive practice can cause a consumer damages even if the consumer does not rely on the deceptive practice when purchasing a particular product. *See Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 n.2 (S.D. Fla. 2010) (noting that deceptive marketing may injure consumers even without individual reliance upon misrepresentations where misrepresentations result in higher prices).

Causation is adequately alleged in the Amended Complaint. Rheem intended for Plaintiffs and the members of the Subclasses to rely on its deceptive acts and practices in purchasing Rheem Products. AC, ¶¶ 20, 165. Plaintiffs would not have purchased the defective Rheem products had Rheem disclosed the true quality, and defective nature of the Rheem products. *Id*. ¶¶ 80, 167. As the result, Plaintiffs were injured by paying a price premium and by paying to diagnose, repair and replace the defective coils. *Id*. ¶ 68, 79, 80, 81, 82, 170, 177. Plaintiffs sufficiently alleged causation and actual injury, and the motion should be denied.

## C.   PLAINTIFFS PROPERLY STATE A CLAIM FOR UNJUST ENRICHMENT IN COUNT V

Rheem argues that Plaintiffs' claim for unjust enrichment is barred by the existence of the Warranty, is duplicative of other legal claims asserted by Plaintiffs, and

1    that Plaintiffs cannot allege a lack of remedy at law.  The Court should reject Rheem's

2    arguments because Plaintiffs are permitted to plead the claim for unjust enrichment in the

3    alternative to their other claims and because Rheem has challenged the existence of an

4    express warranty running to Plaintiffs.

5         Federal Rules of Civil Procedure 8(a) and 8(d)(2) specifically authorize a plaintiff

6    to plead causes of action in the alternative.  "[T]here is no requirement that the

7    Plaintiff[s] include the magic words 'in the alternative' in making alternative claims."

8    *Isofoton, S.A. v. Giremberk*, No. CV-04-0798-PHX-ROS, 2006 WL 1516026, at *3 (D.

9    Ariz. May 30, 2006).  "An unjust enrichment count should not be dismissed unless it was

10   insufficient apart from its inconsistency with the other counts."  *Id.*  "'[T]he mere

11   existence of a contract governing the dispute does not automatically invalidate an unjust

12   enrichment alternative theory of recovery.'"  *Id.* (quoting *Arnold & Assocs., Inc. v. Misys

13   Healthcare Systems*, 275 F. Supp. 2d 1013, 1030 (D. Ariz. 2003)); *Martorella v.

14   Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013) ("Until an

15   express contract is proven, a motion to dismiss a claim for unjust enrichment on these

16   grounds is premature."); *Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188

17   F.R.D. 662, 666 (S.D. Fla. 1999) ("[a]lthough equitable relief ultimately may not be

18   awarded where there exists an adequate remedy at law, Plaintiff certainly may plead

19   alternative equitable relief").

20        The propriety of pleading in the alternative is especially appropriate here, where

21   the Plaintiffs' unjust enrichment claim is not premised on the existence of a valid and

22   enforceable contract.  Rather, Plaintiffs allege that they conferred a benefit on Rheem,

23   Rheem retained that benefit under such circumstances that make it inequitable, and the

24   Plaintiffs are entitled to recover the value of the benefit unjustly retained by Rheem.

25   Moreover, while Rheem relies on the existence of a warranty with Plaintiffs to argue that

26   the Court should dismiss Plaintiffs' unjust enrichment claim, Rheem also denies the

27   existence of that warranty in its argument to dismiss Plaintiffs' claims for breach of

28   warranty.  *See* MTD at 15-16 (stating that "Plaintiffs cannot establish the requisite privity

21

1  [with Rheem] to maintain an action for breach of warranty under any theory"). Rheem

2  cannot have it both ways. *See Sandig v. Pliner*, No. 2:10-CV-02462 JWS, 2011 WL

3  742663, at *1 (D. Ariz. Feb. 24, 2011) (denying motion to dismiss unjust enrichment

4  claim where the defendant denied the existence of a binding and enforceable contract

5  between the parties); *McNutt v. Key Fin. Corp.*, No. CV-09-01847-PHX-ROS, 2010 WL

6  3702509, at *3 (D. Ariz. Sept. 9, 2010) (permitting the plaintiffs to plead unjust

7  enrichment in the alternative where the defendant had not conceded a valid contract

8  existed between the parties); *Martorella*, 931 F. Supp. 2d at 1227 (unjust enrichment may

9  "be pleaded in the alternative where one of the parties asserts that the contract governing

10  the dispute is invalid."). Because the existence of a warranty given to Plaintiffs is in

11  dispute, Plaintiffs may lack a remedy at law and should be permitted to maintain their

12  claim for unjust enrichment in the alternative.[12]

13      In short, Plaintiffs' unjust enrichment claim should not be dismissed, as it properly

14  pled as an alternative claim to Plaintiffs' breach of warranty claims.

15          **D.    PLAINTIFFS HAVE ALLEGED VIABLE DECLARATORY AND
                    INJUNCTIVE RELIEF FAIL CLAIMS**
16

17      Rheem's argues that the "relief [Plaintiffs] seek in Count I is indistinct from, and

18  duplicative of, the relief sought in other counts of the Amended Complaint," Mot. at 25.

19  However, at the 12(b)(6) stage of litigation the Plaintiffs are entitled to seek alternative

20

21  ────────────────

22  [12] Rheem also argues that Plaintiffs' unjust enrichment claim should be dismissed
    because Plaintiff McGee's FDUTPA claim provides a legal remedy. MTD at 23. "The
23  availability of [a] FDUTPA claim does not require dismissal of [an] unjust enrichment
    claim." *Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580-CIV, 2015 WL 1268271, at *5
24  (S.D. Fla. Mar. 19, 2015) (citing *State Farm Mut. Auto. Ins. Co. v. Physicians Injury
    Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011), *rev'd in part sub nom.*, *State
25  Farm Mut. Auto. Ins. Co. v. Williams*, 563 F. App'x 665 (11th Cir. 2014)). In *State Farm*,
    the Eleventh Circuit Court of Appeals explained that the rule that equitable remedies are
26  not available under Florida law when adequate legal remedies exist does not apply to
    unjust enrichment claims unless it is shown that an express contract exists. *See State
27  Farm,* 427 F. App'x at 722.

28

                                      22

forms of relief; thus, it would be premature for the Court to deny them the opportunity to pursue these claims.

### 1. **Declaratory Relief**

In this case, pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq.*, Plaintiffs seek a declaration of their rights under Rheem's express warranties. AC, ¶¶90-97.  Under the DJA:

> The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that in "a case of actual controversy," a court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966). In considering whether to hear a claim for declaratory relief, courts consider (1) whether the judgment "will serve a useful purpose in clarifying and settling the legal relations in issue" and (2) if "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.*

*Noll v. eBay, Inc.*, 282 F.R.D. 462, 469 (N.D. Cal. 2012). In *Noll*, the Court rejected the defendant's argument that declaratory relief should not be considered when the plaintiff's breach of contract claim provides full and adequate relief, opining that a "declaratory judgment may clarify which recurring fees eBay may charge on GTC listings under the existing agreement with sellers." *Id.* Rheem's position is in direct contravention of Rule 57 of the Federal Rules of Civil Procedure, which provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."

Here, a significant number of consumers have purchased and currently own Rheem Products containing the defective coils.  As Plaintiffs have alleged, at some point in the future these Rheem Products will fail, even if the defects are not detectable to the naked eye at present.  A declaration of these consumers' rights under the Rheem express warranties through the current litigation will reduce and streamline the process for other consumers to seek relief when their defective Rheem Products fail. A declaration of the bounds of Rheem's express warranty is necessary if this Court determines that consumers must provide some sort of notice (that the current Plaintiffs are and were unaware of)

needs to be given to Rheem in order to pursue express warranty claims. A declaration clearly expressing consumers' rights and responsibilities would aid those consumers who will suffer from failed Rheem Products in the future.

### 2.   Injunctive Relief

Plaintiffs also seek general injunctive relief to prevent Rheem from continuing to offer defective Rheem Products and to prevent Rheem from continuing to engage in deceptive practices.   AC, ¶¶98-104.   The federal courts have the authority issue injunctive relief in appropriate cases. Fed. R. Civ. P. 65. For the reasons discussed above concerning the sufficiency of the Plaintiffs' claims for declaratory relief, the Plaintiffs have also included sufficient allegations showing they are entitled to injunctive relief.

## V.   PLAINTIFFS NEED NOT PLEAD A MORE DEFINITE STATEMENT OF THEIR CLAIMS

Rheem argues that Plaintiffs must provide a more definite statement because Plaintiffs purportedly did not identify the defect on which they base their claims. Rheem's argument lacks merit, both legally and factually, and should be rejected.

Rule 12(e) motions for a more definite statement "are disfavored and rarely granted." *Martinez v. United States*, No. CIV 13-955-TUC-CKJ, 2014 WL 5792330, at *2 (D. Ariz. Nov. 6, 2014).  They "should be granted only where the complaint is so indefinite that the defendants cannot ascertain the nature of the claims being asserted and literally cannot frame a responsive pleading." *Id.* at *1; *see also Longnecker v. Am. Exp. Co.*, No. 2:14-CV-0069-HRH, 2014 WL 1577522, at *4 (D. Ariz. Apr. 21, 2014) (Rule 12(e) motions are "ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail.").

Rheem cannot plausibly assert that it cannot ascertain the nature of Plaintiffs' claims or frame a responsive pleading.  Rheem is being deliberately obtuse when it argues that Plaintiffs' claims could be based on "virtually any part of any Rheem product that failed for virtually any reason." Mot. at 28.  Plaintiffs' claims are premised on

24

1  Rheem's defective evaporator and condenser coils that leak refrigerant.  This is evident
2  from the A.

3       The Amended Complaint states that Plaintiffs bring their claims on behalf of a
4  class of persons who suffered damages related to defective Rheem copper evaporator or
5  condenser coil products.  AC at ¶1.  It further describes that the coils are defective in that
6  they are leak refrigerant through cracks and holes that form in the coils, including as a
7  result of formicary corrosion.  AC at ¶4.  Still, Rheem argues that Plaintiffs fail to
8  identify certain details concerning their claims; such as the defects, other than
9  susceptibility to formicary corrosion, that cause the coils to leak refrigerant and whether
10 the defects were due to the coils' manufacturing or design.  Mot. at 27-28.  Rheem seeks
11 detail that Plaintiffs are not required to include in their complaint and which Rheem does
12 not need to understand and respond to the complaint.  *See, e.g.*, *Wilson v. Conair Corp.*,
13 No. Civ No. 1:14-894 WBS BA, 2014 WL 4249514, at *6 (E.D. Cal. Aug. 27, 2014);
14 *Croman Corp. v. Gen. Elec. Co.*, No. 2:05-CV-0575-GEB-JFM, 2005 WL 2219261, at *2
15 (E.D. Cal. Sept. 12, 2005); *Leas v. Gen. Motors Corp.*, 278 F. Supp. 661, 662-63 (E.D.
16 Wis. 1968).

17      In *Wilson*, court denied the defendant's Rule 12(e) motion where the plaintiff
18 alleged that she purchased a defective curling iron and that the defendant sent her another
19 defective curling iron a month later. *Wilson*, 2014 WL 4249514, at *6.  The court stated
20 that the "pleading may lack all the detail defendants might like it to contain, but it is
21 certainly not 'unintelligible.'" *Id.*  Similarly, in *Croman*, where the plaintiff asserted
22 claims concerning a helicopter crash, the court denied the defendants' Rule 12(e) motion
23 which argued that the plaintiff "neither identifie[d] the parts allegedly designed or
24 manufactured by [the defendants] nor those parts which allegedly caused the accident."
25 *Croman Corp.*, 2005 WL 2219261, at *2.  The court stated that "the omissions about
26 which Defendants complain do not make the Complaint so vague or ambiguous as to
27 preclude them from framing an answer." *Id.*  Finally, in *Leas*, the court denied the
28 defendant's Rule 12(e) motion complaining that the plaintiff's complaint "does not

25

1   specify 'any part or parts of the automobile' that were defective, or improperly
2   constructed, or improperly designed, or improperly installed." *Leas*, 278 F. Supp. at 662-
3   63.  The court noted that "all that is required of plaintiff's complaint is that it place
4   defendant on notice as to the nature of plaintiff's claims."  *Id.*
5         Because the Amended Complaint contains sufficient information for Rheem to
6   frame its responsive pleading, the Court should deny Rheem's motion for a more definite
7   statement pursuant to Rule 12(e).
8   **VI.**  **CONCLUSION**
9         "[A] complaint should not be dismissed for failure to state a claim unless it
10  appears beyond doubt that the plaintiff can prove no set of facts in support of his claim
11  which would entitle him to relief." *Twombly*, 550 U.S. at 548. This Court should deny
12  Rheem's Motion to Dismiss as the Plaintiffs have alleged a detailed set of facts to support
13  their claim that the Rheem Products are defectively designed and manufactured.
14        Respectfully submitted this 1st day of June 2015.

15
16            */s Gregory F. Coleman*
          Gregory F. Coleman
17            Lisa A. White
18            GREG COLEMAN LAW PC
          550 Main Avenue, Suite 600
19            Knoxville, Tennessee 37902
20            (865) 247-0080 Telephone
          (865) 522-0049 Facsimile
21            greg@gregcolemanlaw.com
22            lisa@gregcolemanlaw.com
          *by Pro Hac Vice*
23
24            B. Lance Entrekin
25            THE ENTREKIN LAW FIRM
          One E. Camelback Road, Ste. 710
26            Phoenix, Arizona 85012
          (602) 954-1123 Telephone
27            lance@entrekinlaw.com
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Shanon J. Carson
Russell D. Paul
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
(215) 875-3000 Telephone
(215) 875-4604 Facsimile
scarson@bm.net
rpaul@bm.net
*by Pro Hac Vice*

***Attorneys for Plaintiffs and the Proposed Classes***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 1, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Pamela M. Overton
GREENBERG TRAURIG, LLP
2375 East Camelback Road
Suite 700
Phoenix, Arizona 85016

David A Coulson
Adam M. Foslid
GREENBERG TRAURIG, LLP
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131

***Attorneys for Defendant Rheem Manufacturing***

_____
Gregory F. Coleman