UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Craig Adelman and Jason McGee,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>Rheem Manufacturing Company,<br><br>　　　　Defendant. | 2:15-cv-00190 JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at Docket 24; and<br>　　Order Requiring Answer] |

## I.  MOTION PRESENTED

At docket 24 defendant Rheem Manufacturing Company ("Rheem") moves to dismiss the Amended Complaint of plaintiffs Craig Adelman ("Adelman") and Jason McGee ("McGee") (collectively, "plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for a more definite statement pursuant to Rule 12(e). Plaintiffs oppose at docket 32. Rheem replies at docket 38. Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

This case is a putative class action brought by consumers of allegedly defective air conditioners, air handlers, and heat pumps manufactured by Rheem. Plaintiffs allege that the copper evaporator and condenser coils in these products are defective because they leak refrigerant. The Amended Complaint ("complaint") contains the

following eight causes of action: (1) for declaratory relief regarding their rights under Rheem's express warranties; (2) for an injunction requiring Rheem to take corrective action; (3) breach of Rheem's express warranties; (4) violation of the Magnuson-Moss Warranty Act ("MMWA"); (5) unjust enrichment; (6) breach of Rheem's express warranties under Arizona law; (7) violation of the Arizona Consumer Fraud Act ("ACFA"); and (8) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").[1]

### III.  STANDARD OF REVIEW

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[2]  To be assumed true, the allegations, "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[3]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[4]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[5]

To avoid dismissal, a plaintiff must plead facts sufficient to "'state a claim to relief that is plausible on its face.'"[6]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1]Doc. 19.

[2]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[3]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[4]*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[5]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[6]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

defendant is liable for the misconduct alleged."[7]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[8]  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[9]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[10]

## IV.  DISCUSSION

**A.     Breach of Warranty Claims**

According to the limited warranty attached to plaintiffs' complaint, Rheem warrants that the equipment covered by the warranty is free from defects, and promises to repair or replace any part that fails in normal use and service within the warranty period.[11]  The warranty further states in capital letters: "THE MANUFACTURER'S SOLE LIABILITY WITH RESPECT TO DEFECTIVE PARTS OR FAILURE SHALL BE AS SET FORTH IN THIS LIMITED WARRANTY, AND ANY CLAIMS FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES ARE EXPRESSLY EXCLUDED."[12]

Counts three, four, and six of the complaint allege warranty-related claims. Count three alleges that Rheem breached its express warranty "because Plaintiffs and the Class Members did not receive a Rheem Product that was free of defects;"[13] count

---

[7]*Id.*

[8]*Id.* (citing *Twombly*, 550 U.S. at 556).

[9]*Id.* (quoting *Twombly*, 550 U.S. at 557).

[10]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); *see also Starr*, 652 F.3d at 1216.

[11]*See, e.g.,* Doc. 19-3 at 2-3.

[12]*Id*. at 2.

[13]Doc. 19 at 41 ¶ 110.

four alleges that Rheem's breach violates the MMWA;[14] and count six alleges that Rheem's breach violates Arizona law.[15] Plaintiffs seek a variety of remedies for Rheem's alleged breach, including consequential damages such as diagnostic costs, costs of lost refrigerant, and costs related to higher utility bills.

Rheem argues that each of plaintiffs' warranty-related causes of action fails to state a claim for several reasons. First, Rheem argues that plaintiffs' claims for consequential damages are precluded by the limited warranty, which limits plaintiffs' remedies to repair and replacement. And second, Rheem argues that plaintiffs' claims for repair and replacement fail because plaintiffs do not allege that Rheem has failed to repair or replace any part.[16] Plaintiffs respond by arguing that the warranty's limitation of remedies should not be given effect because the warranty's remedy fails its essential purpose and, alternatively, the warranty is unconscionable.

### 1. The Warranty's Remedy Satisfies Its Essential Purpose

Limited remedies that fail their essential purpose are unenforceable.[17] A remedy fails its essential purpose where the "product is so deficient it cannot be fixed or the warrantor fails to replace or repair the part."[18] The essential purpose of an exclusive repair or replacement remedy "is to ensure that the purchaser receives a product which

---

[14]*Id.* at 41-46.

[15]*Id.* at 47-48.

[16]*See Baba v. Hewlett Packard Co.*, No. C 09-5946 RS, 2012 WL 5336971, at *7 (N.D. Cal. Oct. 26, 2012) ("As a matter of law, HP cannot have breached the warranty if it upheld its obligation to repair or replace the defective product."); *Chaurasia v. Gen. Motors Corp.*, 126 P.3d 165, 169 (Ariz. Ct. App. 2006) ("To prove a breach of this warranty, Chaurasia must demonstrate that GM refused or otherwise failed to pay for the repair to a covered item. Here, GM paid for all claimed warranty repairs made by its authorized facilities.").

[17]*See* A.R.S. § 47-2719(B).

[18]*Sw. Pet Products, Inc. v. Koch Indus., Inc.*, 107 F. Supp. 2d 1108, 1116 (D. Ariz. 2000).

-4-

conforms to the express warranty,"[19] which in this case means a product "free from defects in materials and workmanship."[20] Plaintiffs argue that Rheem's remedy fails this essential purpose because "the replacement of a defective copper coil with an equally defective copper coil does not 'cure' the defect, but instead postpones the second or subsequent manifestation of the defect."[21]

Plaintiffs' argument is at odds with the facts alleged in their complaint. The complaint states not only that Rheem's allegedly defective products can be fixed by replacing the copper coils with aluminum coils,[22] but also that Rheem stopped "replacing defective copper coils with equally defective copper coils" in 2013.[23] These allegations show that the warranty's remedy can fix the defect, and that Rheem has been fixing the defect in this manner since 2013. The warranty is not void under the essential purpose doctrine.

### 2. Unconscionability

Plaintiffs next attempt to avoid the warranty by arguing that it is substantively and procedurally unconscionable. "[S]ubstantive unconscionability addresses the fairness of the terms of the contract."[24] Under this doctrine a court may refuse to enforce a contract if the contract's terms "are so one-sided as to be overly oppressive or unduly harsh to one of the parties."[25] In contrast, "[p]rocedural unconscionability addresses the

---

[19]*Clark v. Int'l Harvester Co.*, 581 P.2d 784, 798 (Idaho 1978).

[20]Doc. 19-3 at 2.

[21]Doc. 32 at 8.

[22]Doc. 19 at 3 ¶¶ 6-7; 20-21 at ¶ 59;

[23]*Id.* at 3 ¶ 7. Although the complaint alleges that Rheem replaced Adelman's copper coil with "a similarly defective part," this replacement took place in 2012 before Rheem switched to aluminum coils. Doc. 19 at 5 ¶ 15.

[24]*Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013).

[25]*Id.*

fairness of the bargaining process, which 'is concerned with "unfair surprise," fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should.'"[26]  "[T]he determination of unconscionability is to be made by the court as a matter of law" after the parties are "given an opportunity to present evidence of [the contract's] commercial setting, purpose, and effect to aid the court in making the determination."[27]

### a. Substantive unconscionability

To determine whether the warranty is substantively unconscionable the court must "examine the relative fairness of the obligations assumed by the parties, including whether the 'contract terms [are] so one-sided as to oppress or unfairly surprise an innocent party,' whether there exists 'an overall imbalance in the obligations and rights imposed by the bargain,' and whether there is a 'significant cost-price disparity.'"[28] Plaintiffs argue that they sufficiently allege that Rheem's warranty is substantively unconscionable because the warranty requires consumers to pay "hundreds if not thousands of dollars" in "diagnostic costs, labor costs, and refrigerant costs" in order obtain the benefits of the warranty.[29] Plaintiffs fail to cite any cases where a court has held that high out-of-pocket costs rendered a warranty substantively unconscionable, and the court has found none. Rheem's reply does not address plaintiffs' argument.

Under the terms of the warranty, consumers gave up their right to recover incidental and consequential damages in exchange for Rheem's promise to repair or replace defective parts. The complaint alleges that Adelman spent $1,887 out-of-pocket to obtain these repair-and-replace benefits (about 30% of his HVAC system's

---

[26]*Id.* (quoting *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 57 (Ariz. 1995)).

[27]*Maxwell*, 907 P.2d at 56.

[28]*Nickerson v. Green Valley Recreation, Inc.*, 265 P.3d 1108, 1118-19 (Ariz. Ct. App. 2011) (quoting *Maxwell*, 907 P.2d at 58).

[29]Doc. 32 at 10 (citing Doc. 19 at 7 ¶ 23; *id.* at 9 ¶ 29).

original purchase price), whereas McGee's Rheem product was repaired by a third-party vendor for only $369 out of pocket. If it is true that consumers must spend significantly more for Rheem to repair their defective products under the warranty than they would pay a third-party for the same repairs, then their forfeiture of remedies in return for paying this higher price would seem to be a poor bargain indeed. But the court is unable to determine the relative fairness of the parties' competing obligations now, at the motion to dismiss stage. The court cannot yet determine, for example, whether the costs alleged in the complaint are reasonable or typical. Rheem's motion to dismiss will be denied without prejudice to either party's ability to later seek summary judgment on this issue.

### b. Procedural unconscionability

Plaintiffs argue that Rheem knew its coils were defective and that purchasers would incur high out-of-pocket costs to repair the defects, yet failed to disclose that information during the bargaining process. They also argue that the warranty's clause that informs them of their limited remedies is "hidden in fine print . . . buried in the middle of a page of 8-point or smaller font."[30] According to plaintiffs, their ignorance as to these important facts caused unfair surprise, and renders the warranty procedurally unconscionable. Rheem responds by arguing that plaintiffs "have not sufficiently alleged that Rheem intentionally concealed a purported defect,"[31] and that the warranty's limitation of remedies could not have caused unfair surprise because it is conspicuously "set forth in large capital letters."[32]

The court agrees with Rheem that the warranty's limited remedies clause is not hidden in fine print. The entire warranty is only two pages long and the clause in question begins with a bold-type heading, is in the same size font as the rest of the

---

[30]Doc. 32 at 9.

[31]Doc. 38 at 6 n8.

[32]*Id.* at 6.

document, and is written almost entirely in capital letters. The court disagrees with Rheem, however, that plaintiffs failed to sufficiently allege that Rheem intentionally deceived its consumers. For instance, the complaint alleges that Rheem "knew about the defective coils" and "their susceptibility to corrosion," yet "failed to disclose the defect to purchasers."[33] If this is true, as the court must assume, then Rheem knew its consumers were unwittingly waiving their right to recover incidental and consequential repair costs they were certain to incur. Under the facts alleged in the complaint the warranty could be procedurally unconscionable.

### 3. Privity

Rheem next argues that plaintiffs' warranty-related claims fail because plaintiffs do not plead privity between plaintiffs and Rheem.[34] According to Rheem, it is "well-settled Arizona law that lack of privity precludes recovery for breach of express or implied warranty."[35] In *Flory v. Silvercrest Industries*, the Arizona Supreme Court held that a lack of privity precludes recovery under Arizona Uniform Commercial Code ("U.C.C.") warranty claims and claims based on a strict liability theory of breach of implied warranty.[36] But the *Flory* court also held that privity was not required for non-U.C.C. express warranty claims, such as those presented here.[37] It makes sense that privity is not required for such claims because otherwise Rheem's warranty would be

---

[33] Doc. 19 at 3 at ¶¶ 7-8. *See also id.* at 22 ¶¶ 62-63.

[34] Doc. 24 at 15-16.

[35] *Id.* at 15 (citing *Flory v. Silvercrest Indus., Inc.*, 633 P.2d 383, 387 (Ariz. 1981); *J-Hanna v. Tucson Dodge Inc.*, No. CIV 10-504-TUC-CKJ, 2011 WL 4625759, at *3 (D. Ariz. Oct. 5, 2011); *In re Minnesota Breast Implant Litig.*, 36 F. Supp. 2d 863, 874 (D. Minn. 1998)).

[36] *Flory*, 633 P.2d at 387 n1. *See also Chaurasia v. Gen. Motors Corp.*, 126 P.3d 165, 171 (Ariz. Ct. App. 2006) ("Under Arizona law, privity of contract is required to maintain an action for breach of an implied warranty.").

[37] *Flory*, 633 P.2d at 389 ("Our cases would not preclude finding Silvercrest liable on a non-U.C.C. express warranty made by them to Florys should sufficient facts be established on retrial to support such a theory.").

-8-

meaningless. Rheem's argument fails because it is contrary to law and, if accepted, would lead to absurd results.[38]

**B.    Consumer Protection Claims**

Counts seven and eight of the complaint allege violations of the ACFA and FDUTPA, respectively. Rheem argues that these claims must be dismissed because they are time barred under the applicable statutes of limitations, not pleaded with sufficient particularity, and plaintiffs fail to sufficiently allege causation.

    **1.    Statutes of Limitations**

        **a.    Adelman's ACFA claim**

The parties agree that Adelman's ACFA claim is subject to a one year statute of limitations.[39] Under Arizona law's "discovery rule," "a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause."[40] Rheem argues that the limitations period began to run on Adelman's ACFA claim in April 2012, at the latest, when Adelman first discovered an issue with his Rheem unit. Plaintiffs disagree, and argue that the coil's defect was difficult to discover. They assert that Adelman could not have reasonably discovered that the leaking refrigerant was caused by Rheem's use of copper coils until a second copper coil installed in his unit began to leak refrigerant.

Rheem's argument is misplaced in the context of a motion to dismiss. "When discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury."[41] Because the facts alleged in the complaint support a reasonable

---

[38] *See Seekings v. Jimmy GMC of Tucson, Inc.*, 638 P.2d 210, 215 (Ariz. 1981) ("[L]ogic precludes rendering meaningless a manufacturer's express warranty to a retail purchaser.").

[39] A.R.S. § 12-541(5).

[40] *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995).

[41] *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998).

inference that Adelman did not discover the defective coils until after they failed for a second time, Rheem's argument fails.

### b. McGee's FDUTPA claim

The parties agree that McGee's FDUTPA claim is subject to a four year statute of limitations.[42] Plaintiffs concede that McGee's claim was not filed within four years of its accrual. They argue that it is nonetheless viable because "the FDUTPA statute of limitations has been nullified through the doctrine of equitable estoppel" because "Rheem took active steps before and after the sale to prevent . . . McGee from discovering the latent defect in Rheem [sic] coils."[43] "'The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury.'"[44] In the context of a statute of limitations defense, equitable estoppel prevents a party "'from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period.'"[45]

Rheem argues that equitable estoppel does not apply here because it is not one of the grounds enumerated under Fla. Stat. § 95.051 for tolling the statute of limitations.[46] This argument is meritless; it was roundly rejected in *Major League*

---

[42]Fla. Stat. § 95.11(3)(f).

[43]Doc. 32 at 15-16.

[44]*Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076 (Fla. 2001) (quoting *State ex rel. Watson v. Gray*, 48 So.2d 84, 87-88 (Fla. 1950)).

[45]*Id.* at 1079 (quoting *Bomba v. W. L. Belvidere, Inc.*, 579 F.2d 1067, 1070 (7th Cir. 1978)).

[46]Doc. 38 at 9.

*Baseball v. Morsani*—the very case Rheem cites in support of its argument.[47] In *Morsani* the Florida Supreme Court explained that equitable estoppel "does not 'toll' anything. By definition (and by usage throughout the centuries), equitable estoppel 'estops' or bars a party from asserting something (e.g., a fact, a rule of law, or a defense) that he or she otherwise would be entitled to assert."[48] The court held "that the 'tolling' proscription in section 95.051, Florida Statutes, does not embrace the common law doctrine of equitable estoppel, for equitable estoppel is not a 'tolling' doctrine."[49]

Rheem also argues that the complaint is devoid of facts suggesting that Rheem induced purchasers such as McGee from forbearing suit. Plaintiffs disagree, and point to the complaint's averments that Rheem knew about the copper coils' latent defects yet fraudulently omitted that information from purchasers,[50] and affirmatively warranted that its products were free from defects.[51] This is insufficient. Equitable estoppel "'presupposes that the plaintiff knows of the facts underlying the cause of action but delayed filing suit because of the defendant's conduct.'"[52] According to the complaint, McGee did not know about the facts underlying his FDUPTA cause of action until after the statute of limitations had expired. The equitable estoppel doctrine is of no avail to him.[53] Count eight of the complaint will be dismissed.

---

[47]*Morsani*, 790 So. 2d at 1073.

[48]*Id.* at 1077.

[49]*Id.* at 1080.

[50]Doc. 19 at 22 ¶ 63, 50 ¶ 162.

[51]*Id.* at 35 ¶ 88.

[52]*Ryan v. Lobo De Gonzalez*, 841 So. 2d 510, 518 (Fla. Dist. Ct. App. 2003) (quoting *Bell v. Fowler*, 99 F.3d 262, 266 n.2 (8th Cir.1996)).

[53]*See id.* at 520 ("[T]he trial court correctly ruled that equitable estoppel does not support the children's claims because Maria Luisa was not aware that she had a cause of action until 1996 . . . and she was, therefore, not induced to forego filing suit within the

### 2. Whether Adelman's ACFA claim complies with Rule 9(b)

Rheem argues that Adelman's ACFA claim should be dismissed because he alleges fraud but does not satisfy Rule 9(b). Rule 9(b)'s particularity requirement applies to state law fraud causes of action brought in federal court.[54] Pursuant to Rule 9(b) plaintiffs "must state with particularity the circumstances constituting fraud." To comply with this rule, "allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'"[55] At a minimum, plaintiffs must describe each allegedly fraudulent statement or omission and "set forth an explanation as to why each statement or omission complained of was false or misleading."[56]

The ACFA prohibits "any deception, . . . fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission" "whether or not any person has in fact been misled, deceived or damaged thereby."[57] "The elements of a claim for relief under the [ACFA] are not necessarily identical to the elements of a common law fraud action. A violation of the [ACFA] is more easily shown."[58] "The elements of a private cause of action for statutory fraud are a false promise or

---

limitations period.").

[54]*Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012).

[55]*Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993)).

[56]*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), superseded on other grounds by 15 U.S.C. § 78u–4(b)(2).

[57]A.R.S. § 44-1522(A).

[58]*Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. Ct. App. 1978).

misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury.  For the false advertisement to cause the injury, the hearer must actually rely on the advertisement; unlike common law fraud, this reliance need not be reasonable."[59]

Adelman's ACFA claim generally alleges that Rheem violated the ACFA by selling "the defective Rheem Products representing them to be reliable, free from defects and fit for their intended purpose," and by failing to disclose "that the Rheem Products suffered from a defect which would result in premature failure and refrigerant leakage."[60] More specifically, the complaint alleges that "[d]espite its knowledge of the defective coils, Rheem misrepresented the quality" of its products without disclosing their known problems on its website,[61] in its "Online Warranty Guide,"[62] and in its limited warranty.[63]  The complaint further alleges that these representations and omissions were false and misleading because they gave purchasers the false impression that Rheem's products were not defective, thereby inducing them to purchase a product they would not have purchased if they had known the truth.[64]

Rheem characterizes these allegations as merely "legal buzzwords and general, conclusory statements"[65] and agues in a footnote that they are therefore non-actionable

---

[59]*Parks v. Macro-Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. Ct. App. 1979) (citations omitted).

[60]Doc. 19 at 51 ¶ 164.

[61]*Id.* at 23 ¶ 66 ("Top-quality, innovative products with the latest technology, dependable performance, great warranties and excellent service and support.").

[62]*Id*. at 24 ¶ 67 ("The Rheem reputation for durability and reliability is supported by our strong warranties.").

[63]*Id.* at 25 ¶ 71 (stating that Rheem "warrants the Covered Equipment to be free from defects in materials and workmanship.").

[64]*Id.* at 51 ¶ 167.

[65]Doc. 24 at 19.

puffery.⁶⁶ But this is not a Rule 9(b) argument; it goes to whether plaintiffs have stated a claim under the ACFA. That issue is discussed immediately below. Because the complaint identifies three allegedly misleading or false statements and sets forth an explanation for why those statements and omissions were false and misleading, Adelman's ACFA claim satisfies Rule 9(b).

### 3. Whether Adelman sufficiently alleges reliance

As noted above, actual reliance is a necessary element of a claim under the ACFA. Plaintiffs do not dispute that they do not allege actual reliance. Instead, plaintiffs argue that "Rheem intended for Plaintiffs and the members of the Subclasses to rely on its deceptive acts and practices," and that plaintiffs "would not have purchased the defective Rheem products had Rheem disclosed the true quality, and defective nature of the Rheem products."⁶⁷ As Rheem observes, the complaint does not allege that Adelman actually relied on any of Rheem's allegedly misleading statements. Plaintiffs therefore fail to state a claim under the ACFA.

## C. Unjust Enrichment

Rheem argues that plaintiffs have not stated a claim for unjust enrichment because the warranty is an express contract that governs the parties' relationship.⁶⁸ But, as plaintiffs argue, unjust enrichment may be pleaded in the alternative where one of the parties asserts that the contract is invalid.⁶⁹ In such cases, including the present

---

⁶⁶*Id.* at 20 n.14.

⁶⁷Doc. 32 at 20.

⁶⁸Doc. 24 at 22-24 (citing, among other cases, *Brooks v. Valley Nat. Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) ("[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application."); *Hiatt v. Melhorn*, No. 1 CA-CV 08-0727, 2009 WL 4981486, at *5 (Ariz. Ct. App. Dec. 22, 2009) ("Because the parties' relationship was governed by the JVA, and the Hiatts could pursue a legal claim against the Mehlhorns based on that document, the doctrine of unjust enrichment has no application here.")).

⁶⁹*See Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013).

case, "[u]ntil an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature."[70]

## D. Whether Counts One and Two State Viable, Independent Claims

Count one of the complaint seeks a declaration that "plaintiffs are entitled to recover their out-of-pocket expenses related to repair and/or replacement of their defective Rheem Products, or any of their component parts under the Express Warranties."[71] Count two seeks an injunction "prohibiting Rheem from refusing to take appropriate corrective action" by, among other things, requiring Rheem to issue a nationwide recall or warnings, or prohibiting Rheem from selling the defective products.[72] Rheem argues that these two counts do not state claims because declaratory and injunctive relief are remedies, not independent causes of action.[73]

### 1. Declaratory relief

Under a section entitled "Creation of remedy," the Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction," a court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'"[74] Rule 57 provides that

---

[70]*Id*. at 1228.

[71]Doc. 19 at 37 ¶ 94.

[72]*Id.* at 39 ¶ 104.

[73]Doc. 24 at 24-25 (citing, among other cases, *Colonial Sav., FA v. Gulino*, No. CV-09-1635-PHX-GMS, 2010 WL 1996608, at *8 (D. Ariz. May 19, 2010) ("Under Arizona law, injunctions and declaratory judgments, generally are not separate causes of action. Instead, they are merely remedies that must be premised on some other legal theory."); *Grady v. Tri-City Nat. Bank*, No. CV 12-2507-PHX-JAT, 2013 WL 2147541, at *6 (D. Ariz. May 15, 2013) ("Plaintiffs have a 'Count' for declaratory judgment. Despite pleading declaratory judgment as a separate count, however, Plaintiffs clearly seek declaratory judgment as a remedy in this case."); *Robinson v. BAC Home Loans Servicing, LP*, No. CV11-1920-PHX-JAT, 2012 WL 1520125, at *3 (D. Ariz. May 1, 2012) ("A request for injunctive relief is not a separate cause of action [under Arizona law], but is a request for equitable relief.")).

[74]28 U.S.C. § 2201(a).

"[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."

The remedy of a declaratory judgment is appropriate when the judgment will (1) "serve a useful purpose in clarifying and settling the legal relations in issue;" and (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."[75] "Ordinarily the question of whether a district court shall exercise jurisdiction in a declaratory judgment action rests in the sound discretion of that court."[76]

Plaintiffs seek a declaration that they are entitled to recover the out-of-pocket expenses they incurred when attempting to fix their defective Rheem products. In other words, they are seeking monetary damages. Because plaintiffs are already seeking the same monetary damages pursuant to their warranty-related claims, and their entitlement to such damages are dependant on the resolution of those claims, the declaratory judgment that plaintiffs seek in count one would serve no useful purpose.[77] Rheem's motion to dismiss count one will be granted.

### 2. Injunctive relief

Plaintiffs argue that their cause of action for injunctive relief is valid under Rule 65, which they argue grants the court authority to issue "general injunctive relief."[78] It is true that Rule 65 describes the court's authority to issue injunctive relief where the plaintiff is "threatened by some injury for which he has no adequate legal remedy."[79]

---

[75]*McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (internal quotation omitted).

[76]*Id.*

[77]*See Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action.").

[78]Doc. 32 at 24.

[79]11A Charles Alan Wright & Arthur R. Miller, *et al.*, Fed. Prac. & Proc. Civ. § 2942 (3d ed.).

But it is well-settled that a claim for "injunctive relief," standing alone, is not a cause of action.[80]  Although "[i]njunctive relief may be available if Plaintiffs are entitled to such a remedy on an independent cause of action,"[81] plaintiffs' stand-alone cause of action for injunctive relief does not state an independent claim, and will be dismissed.

**E.     A More Definite Statement Is Unnecessary**

Rheem argues that it is entitled to a more definite statement pursuant to Rule 12(e) because it cannot ascertain the nature of plaintiffs' claims.[82]  Rule 12(e) provides such relief where a party's pleading "is so vague or ambiguous that the party cannot reasonably prepare a response."[83]  That is clearly not the case here.  The basis of plaintiffs' claims is straightforward: Rheem's copper evaporator and condenser coils are defective because they leak refrigerant.  Although the complaint may be ambiguous about exactly how or why those coils leak refrigerant, the complaint is adequate and requires a response.

## V.  CONCLUSION

For the reasons stated above, Rheem's motion at docket 24 is **GRANTED IN PART** and **DENIED IN PART**.  Counts one, two, seven, and eight of the complaint are dismissed.  Rheem's motion is denied in all other respects.

**IT IS FURTHER ORDERED** that Rheem shall file its Answer within 7 days from the date this order is filed.

---

[80] *See, e.g., Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action"); *Henke v. ARCO Midcon, L.L.C.*, 750 F.Supp.2d 1052, 1059–60 (E.D. Mo. 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); *Plan Pros, Inc. v. Zych*, No. 8:08CV125, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) ("[N]o independent cause of action for injunction exists").

[81] *Albritton v. Tiffany And Bosco, P.A.*, No. CV 12-924-TUC-HCE, 2013 WL 3153848, at *11 (D. Ariz. June 19, 2013) (internal quotation omitted).

[82] Doc. 24 at 26-28.

[83] Fed. R. Civ. P. 12(e).

DATED this 14th day of August, 2015.

/s/
JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE